GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

JOHNATHAN C. BOLTON      9650-0
   jbolton@goodsill.com
CHRISTOPHER P. ST. SURE 10001-0
   cstsure@goodsill.com
DYLAN J. TASCHNER         10618-0
   dtaschner@goodsill.com
First Hawaiian Center
999 Bishop Street, Suite 1600
Honolulu, Hawai'i 96813
Telephone: (808) 547-5600
Facsimile:  (808) 547-5880

Attorneys for Plaintiff
NEXTGEAR CAPITAL, INC.

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | CIVIL NO. 18-cv-415 |
| Plaintiff, | COMPLAINT; EXHIBITS "A" – "K"; SUMMONS |
| vs. | |
| ENVY HAWAII LLC d/b/a WINDWARD MOTORS d/b/a V RENT A CAR d/b/a VOLVO OF HONOLULU and MIKHAIL BORISOVICH FEDOTOV, | |
| Defendants. | |

## COMPLAINT

Plaintiff NEXTGEAR CAPITAL, INC. ("Plaintiff, "NextGear", or

"Lender"), for its Complaint against Defendants ENVY HAWAII LLC d/b/a

WINDWARD MOTORS d/b/a V RENT A CAR d/b/a VOLVO OF HONOLULU
("Envy" or "Borrower") and MIKHAIL BORISOVICH FEDOTOV ("Fedotov" or
"Guarantor"), allege as follows:

## NATURE OF THE ACTION

1.      Envy is a recently defunct Volvo car dealership in Honolulu.  Until its
closure in mid-December 2017, Envy was the sole licensed Volvo dealer in the
State of Hawai'i.  NextGear is a floorplan lender that provides loans to automotive
dealers to acquire and retain motor vehicle inventory for their lots.  From 2015
through 2017, NextGear made inventory-specific loans so Envy could purchase
new vehicles from its original equipment manufacturer, Volvo Car USA LLC
("Volvo").  In addition, NextGear financed Envy's acquisition of used vehicle
inventory, rental inventory, and the retention of trade-ins.

2.      NextGear holds a first-priority, perfected security interest in
substantially all assets of Envy, including all of the motor vehicle inventory,
equipment, parts, and general intangibles.  Just like a typical floorplan relationship,
Envy was contractually required to repay NextGear, in its entirety, any loan
advance made for a specific vehicle upon the earlier of the following:  (a) Envy
receiving proceeds from the sale of the vehicle; or (b)(1) in the case of a new
vehicle, 364 days from flooring, or (ii) in the case of used vehicle, 150 days from

flooring.  Fedotov, as the sole member of Envy, is liable for the entire indebtedness due and owing to NextGear pursuant to an individual guarantee.

3.     This case concerns NextGear's remedies for Envy's failure to comply with the terms of the Loan Agreements (defined below) with NextGear, including failing to repay the amounts due thereunder.

## PARTIES

4.     Plaintiff NextGear is, and at all times relevant herein was, a corporation incorporated under the laws of Delaware with its principal place of business in Carmel, Indiana.

5.     Defendant Envy is a Hawai'i limited liability company with its principal place of business in Honolulu, Hawai'i.

6.     Defendant Fedotov is a resident and citizen of the State of Hawai'i and is the sole Manager of Envy.

## JURISDICTION AND VENUE

7.     Pursuant to 28 U.S.C. § 1332, jurisdiction in this Court is proper because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.     Pursuant to 28 U.S.C. §1391, venue of this action in this Court is proper because a substantial part of the events and omissions giving rise to the claims occurred in this district, the vehicles and other collateral at issue in this case

are situated in this district, and Defendants either reside or conduct business in the State of Hawai'i.

## BACKGROUND FACTS

9.   On or about September 4, 2015, Plaintiff and Envy entered into a *Demand Promissory Note and Loan and Security Agreement* (the "Note"), which evidenced Plaintiff's loan to Envy in the original principal amount of $500,000.00, secured by a lien and security interest in substantially all of the assets of Envy.  A true and correct copy of the Note is attached hereto as **Exhibit "A"** and is incorporated herein by reference for all purposes.[1]

10.   On or about September 4, 2015, Plaintiff and Defendant Envy entered into a *Power of Attorney (Entity/Partnership)* (the "Power of Attorney") in which, among other things, Envy gave NextGear full power and authority to take the following actions upon the occurrence of an Event of Default:

   (a)   demand, collect, accept receipt for, settle, compromise, adjust, foreclose, or realize upon any of the Collateral, in each case in such manner as Lender may determine;

   (b)   file or prosecute any claim, litigation, suit, petition, writ, or proceeding in any court of competent jurisdiction or before any arbitrator or other neutral, or take any other action otherwise deemed appropriate by Lender for the purpose of collecting any and all such moneys due to Borrower, whenever payable, and to enforce any other right in respect of the Collateral, including, without

---

[1] The Advance Schedule, made a part of the Note, required that Envy make principal reduction payments in the amount of 1.25% every 30 days for 36 months in order to extend the Maturity Date (as defined therein).

limitation, confessing to or consenting to judgments, writs of replevin or possession, and/or any equitable relief in favor of Lender or its Affiliates;

(c)      file or prosecute all proofs of claim against any account debtor on behalf of Borrower; and

(d)      notify the United States Postal Service of a change in address for the delivery of Borrower's mail to an address designated by Lender, and to receive Borrower's mail on behalf of Borrower.

A true and correct copy of the Power of Attorney is attached hereto as **Exhibit "B"** and is incorporated herein by reference for all purposes.

11.      On or about September 4, 2015, Fedotov signed an *Individual Guaranty* (the "Guaranty") wherein he "voluntarily, unconditionally, and absolutely guarantee[d] (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all Liabilities; and (ii) the full and prompt performance of all the terms, covenants, conditions, and agreements related to the Liabilities . . ." and he "agree[d] to pay all expenses, including attorneys' fees and court costs . . . incurred by Lender or its Affiliates in endeavoring to collect on any Liabilities, and enforcing this Guarantee . . . plus interest on such amounts at the lesser of (a) thirteen percent (13%) per annum, compounded daily, or (B) the maximum rate permitted by law."[2]  A true and

---

[2] The Note defines the term "Liabilities" to mean "any and all Advances, debts, financial obligations, Administrative Charges, Lender Universal Program Fees, Interest, Floorplan Fees, NSF fees, late fees, charges, expenses, attorneys' fees, costs of collection, covenants, and duties owing, arising, due, or payable from Borrower to Lender of any kind or nature, present, or future,

correct copy of the Guaranty is attached hereto as **Exhibit "C"** and is incorporated herein by reference for all purposes.

12.     On or about September 30, 2015, Plaintiff filed a UCC-1 Financing Statement (the "UCC-1") against Envy with the Bureau of Conveyances of the State of Hawaii under File No. A-57510810, in order to perfect its security interest and liens in the Collateral (as that term is defined in the Note). A true and correct copy of the UCC-1 is attached hereto as **Exhibit "D"** and is incorporated herein by reference for all purposes.[3]

13.     On or about March 16, 2016, Plaintiff and Envy entered into an *Amendment to Demand Promissory Note and Loan and Security Agreement* (the "Amendment"), which increased Envy Hawaii's Credit Line under the Note to $9,500,000. Defendant Fedotov acknowledged and consented to the Amendment as indicated by his signature thereon. A true and correct copy of the Amendment is attached hereto as **Exhibit "E"** and is incorporated herein by reference for all purposes.

14.     On or about March 16, 2016, Plaintiff and Envy entered into an Advance Schedule (the "Advance Schedule Amendment"), which, among other

---

under any instrument, guaranty, or other document, whether arising under this Note, any other Loan Document, or otherwise, whether directly or indirectly (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing, or hereafter arising, and however acquired."

[3] The Note, the Power of Attorney, the Guaranty, the Amendment, the Advance Schedule Amendment, and the UCC-1, together will all other documents evidencing the indebtedness, shall collectively be referred to herein as the "Loan Documents."

things, increased the required principal reduction to extend the Maturity Date to 2.50% for specified periods of days.  A true and correct copy of the Advance Schedule Amendment is attached hereto as **Exhibit "F"** and is incorporated herein by reference for all purposes.

15.     In early 2017, Plaintiff learned that Envy was in severe financial distress.  Envy advised NextGear that it had sold approximately One Millon Dollars ($1,000,000) of vehicle inventory "out of trust," meaning Envy sold cars financed by NextGear, received the proceeds from the sales of those cars, but failed to hold the proceeds in trust or deliver them to NextGear, as contractually required by the Note.  Envy further advised NextGear that it did not have the financial ability to pay off new cars within 365 days that had not yet sold, as required by the Note.

16.     NextGear later discovered that Envy had been providing NextGear with fraudulent rental agreements to conceal inventory that had been sold out of trust.

17.     On or about May 17, 2017, Plaintiff declared Envy to be in default under the Note due to its payment defaults.

18.     In June 2017, NextGear and Envy decided to work towards an amicable commercial divorce and entered into a Compromise Agreement, a copy of which is attached hereto as **Exhibit "G**.**"**  Pursuant to the Compromise

Agreement, Envy, *inter alia,* acknowledged the indebtedness to NextGear and underlying defaults, waived any equitable defenses to claims by NextGear, and provided NextGear a release from all claims.  In exchange, NextGear agreed to forbear from exercising its default remedies such as repossessing inventory, until August 1, 2017, so Envy could obtain a substitute lender or sell the business.

19.     Envy located a buyer for the business and began a sales process. However, the potential buyer backed out in early September 2017.  This prompted Envy's counsel to send a letter to NextGear and Volvo stating that, due to the buyer backing out of the sale, Envy had no option but to cease operations at the dealership effective September 15, 2017.  Volvo responded to that letter by accepting Envy's "voluntary termination" of the Franchise Agreement (defined below).  A few days later, NextGear and Volvo further determined that Envy was not paying its landlord, it was indebted to its landlord in an amount exceeding $700,000, the landlord filed suit, and  that Envy executed an Agreed Judgment for eviction.

20.     Immediately thereafter, on or around September 18, 2017, NextGear reached an informal understanding with Volvo and Envy that would permit Envy to continue operations at the dealership for a short period while Envy actively marketed the dealership.  Specifically: (a) NextGear provided additional floorplan advances to Envy so it could pay its landlord a sufficient sum to remain in the

premises through December 31, 2017, pursuant to a written letter agreement with the landlord; (b) Volvo agreed to *not* consider the Franchise Agreement as being terminated and to assist with locating a purchaser and expediting Volvo's approval of any prospective new franchisee; and (c) Envy agreed to continue operating the service center so that Volvo customers could get warranty work completed at the dealership by a licensed Volvo mechanic.

21.     Although Envy worked towards finding a buyer, its efforts were unsuccessful.  In mid-November 2017, Volvo reached out to NextGear and requested a three-party mediation.  However, while the parties were working together to agree upon a location of mediation and the best mediator for these issues, Volvo, unilaterally and without notice, terminated Envy's rights under its Franchise Agreement.

22.     Despite the termination, the mediation took place on December 19, 2017, but was unsuccessful.

23.     Following the failure of the mediation,  Envy's failure to locate a buyer for the business, and Envy's continued failure to comply with the terms of the Note, NextGear declared an event of default under the Note and repossessed the majority of the vehicles upon which it holds a lien pursuant to the Loan Documents.

24.     Plaintiff has declared the entire Indebtedness due and owing under the Note, which indebtedness, including principal, interest, finance charges and other fees as of  October 23, 2018, is no less than $3,977,273.50 (the "Indebtedness"), as set forth on the report attached hereto as **Exhibit "H"**.

## THE LITIGATION BETWEEN ENVY AND VOLVO

25.     On or about January 27, 2017, Envy initiated a lawsuit against Volvo in the United District Court of the District of Hawai'i, under Civil No. 17-cv-00040 (the "Federal Lawsuit"), alleging that Volvo wrongfully breached the Authorized Retailer Agreement between Envy and Volvo entered into on or about July 8, 2016 (the "Franchise Agreement").  A true and correct copy of the First Amended Complaint filed in the Federal Lawsuit is attached hereto as **Exhibit "I"** and is incorporated herein by reference for all purposes.

26.     On or about April 6, 2018, Volvo filed a Motion for Leave to file a Second Amended and Supplemental Counterclaim against Envy and Fedotov, which was granted on May 25, 2018 (the "Volvo Motion to Supplement Counterclaim").  A true and correct copy of the Motion for Leave to file a Second Amended and Supplemental Counterclaim is attached hereto as **Exhibit "J"** and is incorporated herein by reference for all purposes.

27.     On or about January 12, 2018, Envy also initiated a lawsuit against Volvo in the Circuit Court of the First Circuit, State of Hawai'i, Civil No. 18-1-

0000-67 (the "State Court Lawsuit," together with the Federal Lawsuit, the "Lawsuits"), alleging Volvo's breach of the Franchise Agreement.  A true and correct copy of the Complaint filed in the State Court Lawsuit is attached hereto as **Exhibit "K"** and is incorporated herein by reference for all purposes.

28.     Envy's Lawsuits against Volvo are a corporate asset, and the proceeds of any settlement or judgment obtained against Volvo in those cases should to be paid to NextGear, as the senior secured creditor before any distributions are made to any other creditors or shareholders of Envy.

## COUNT I

## BREACH OF CONTRACT AGAINST DEFENDANT ENVY

29.     Plaintiff incorporates the allegations of the preceding paragraphs of the Complaint as if fully restated herein.

30.     Envy has defaulted under the Note by failing and/or refusing to make timely payment of all amounts due to Plaintiff thereunder.

31.     As of October 23, 2018, Envy is liable for and owes Plaintiff the sum of no less than $3,977,273.50 plus interest at the rate provided in the Note, and all other charges and fees, including attorneys' fees and costs, as set forth in the Note.

32.     All conditions precedent to Plaintiff's recovery have been performed or have occurred.

33.     Despite demand for payment by NextGear, the Indebtedness has not been fully satisfied.

34.     As a result of its failure to pay the amounts due to Plaintiff thereunder, Envy is in default of the terms of the Loan Documents.  Envy's continued failure and refusal to perform under the Loan Documents amounts to a breach of the terms of the Loan Documents.

35.     By reason of the above facts, Plaintiff is entitled to judgment against Envy for all amounts owing under the Loan Documents, together with attorney's fees and costs.

## COUNT II

## TURNOVER OF BOOKS AND RECORDS OF DEFENDANT ENVY

36.     Plaintiff incorporates the allegations of the preceding paragraphs of the Complaint as if fully restated herein.

37.     Under Section 4(e) of the Note, Plaintiff has the right to inspect and copy Envy's books and records.  Moreover, under Section 2(a) of the Note, Plaintiff has a security interest in all of the books and records of Envy (including any books and records contained on computer hardware or software or otherwise stored by or on behalf of Envy in electronic or digital form), all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and incentive payments, chattel paper, including, without limitation, all Receivables

and general intangibles now owned or hereafter acquired by Borrower; all cash reserves; including the right to collect all of the foregoing upon Envy's default.

38.     Section 7(d) of the Note provides that: "Lender may take control of any funds generated by any Collateral, and in Lender's name or Borrower's name, demand, collect, receipt for, settle, compromise, sue for, repossess, accept returns of, foreclose, or realize upon any Collateral."

39.     As a result of Envy's defaults, Plaintiff requests that the Court enter an order requiring that Envy to turn over its books and records to Plaintiff (or any Receiver appointed by the Court) so that Plaintiff (or the Receiver) can collect all cash reserves, accounts receivable and any payments under leases of the Collateral.

## COUNT III

## APPOINTMENT OF A RECEIVER AGAINST DEFENDANT ENVY

40.     Plaintiff incorporates the allegations of the preceding paragraphs of the Complaint as if fully restated herein.

41.     Section 2(a) of the Note grants NextGear a security interest in, among other things, "all of Borrower's assets and properties, wherever located, including, without limitation . . . all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and incentive payments, chattel paper, including, without limitation, all Receivables and general intangibles[4] now owned or hereafter

---

[4] The UCC's definition of "general intangibles," adopted in Indiana, specifically includes "things in action" and the proceeds of an anticipated recovery from an impending lawsuit constitute

acquired by Borrower; all cash reserves . . . and proceeds of any of the foregoing . . . ."

42.     Although NextGear has already repossessed and liquidated the majority of the vehicles, the Lawsuits are valuable assets of Envy and constitute important collateral of NextGear.  Plaintiff has no assurance the lawsuits will be diligently prosecuted by Envy.  In particular, in the Federal Lawsuit, Volvo has sought to add counterclaims against Envy and Fedotov as recently as April 6, 2018, filing the Volvo Motion to Supplement Counterclaim.  Unless a receiver is appointed to take control the Hawaii federal and state lawsuits, Plaintiff's collateral is in imminent danger of loss or diminishment in value due to lack of diligent prosecution and/or the threat of inadequate settlement of Envy's claims.  Plaintiff is particularly concerned since Fedotov is also a defendant in at least one of the cases and, because of his own self-interest, could prosecute and/or settle the federal and state litigation in a fashion less favorable to Envy and more favorable to him personally.  Further, Fedetov failed to personally attend the mediation in December 2017, and it appears that the August 2018 settlement conference in the Federal Lawsuit, like the mediation, was also unsuccessful.

---

general intangibles under Article 9 of the UCC.  First American Bank Valley v. George J. Hegstrom Co., Inc., 551 N.W.2d 288, 292 (1996) ("Courts uniformly hold that, under the UCC, proceeds of an anticipated recovery from an impending lawsuit constitute general intangibles.").

43.     A Receiver is necessary to ensure that any of Plaintiff's remaining collateral in the possession of Envy is protected and maintained, the Hawaii federal and state lawsuits are diligently prosecuted, and any proceeds of a judgment or settlement in those cases are timely remitted to Plaintiff.  Legal remedies for damages are inadequate because, on information and belief, Envy is insolvent. Therefore, unless a Receiver is appointed to protect and preserve Plaintiff's collateral, Envy may make litigation or settlement decisions to the detriment of Plaintiff and the value of Plaintiff's collateral.

44.     Pursuant to the foregoing, and Federal Rule of Civil Procedure 66, Plaintiff is entitled to appointment of a Receiver in this case.

## COUNT IV

### BREACH OF CONTRACT AGAINST DEFENDANT FEDOTOV

45.     Plaintiff incorporates the allegations of the preceding paragraphs of the Complaint as if fully restated herein.

46.     Defendant Fedotov is the Manager of Envy and is fully aware Envy's payment defaults under the Loan Documents.

47.     Defendant Fedotov signed the Guaranty in order to induce Plaintiff to make a loan to Envy.

48.     Envy is in default of its obligations under the Loan Documents, which default triggered Defendant Fedotov's liability under the Guaranty.

49.     Fedotov has failed and/or refused to make payment of the Indebtedness owed by Envy to Plaintiff under the Loan Documents and the Guaranty.

50.     Pursuant to the terms of the Guaranty, Defendant Fedotov is liable to Plaintiff for the entire Indebtedness owed by Envy in the sum of no less than $3,977,273.50 as of October 23, 2018, plus interest, fees and other charges incurred thereafter at the rate specified in the Loan Documents.

## RECOVERY OF ATTORNEY'S FEES AND COSTS

51.     Plaintiff incorporates the allegations of the preceding paragraphs of the Complaint as if fully restated herein.

52.     Section 18 of the Note provides that, "Borrower shall pay to Lender all reasonable legal fees, expenses, and collection costs incurred by any Lender Parties, including Lender as a result of any Event of Default, or any failure by Borrower or any Guarantor to perform any obligation or satisfy any Liability of Borrower, including any prosecution by Borrower or any Guarantor or any of their respective Representatives of affirmative claims or counterclaims against Lender Parties."

53.     Plaintiff has incurred, and will incur in the future, attorney's fees, costs, and expenses in connection with the collection of its unpaid debt in an amount yet to be determined.

54.    Plaintiff is entitled to judgment against Defendants, jointly and severally, for recovery of such attorney's fees, costs, and expenses as determined and allowed by this Court.

55.    Pursuant to H.R.S. § 607-14, because Plaintiff's claims are based on "a contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee.  The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment."

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff NEXTGEAR CAPITAL, INC. demands judgment in its favor and against Defendants as follows:

1.    Under Count I, against Defendant ENVY HAWAII LLC in the sum of no less than $3,977,273.50, plus interest, fees and other charges all as specified in the Note;

2.      Under Count II, against Defendant ENVY HAWAII LLC to turnover all of its books and records to Plaintiff;

3.      Under Count III, for appointment of a receiver against Defendant ENVY HAWAII LLC;

4.      Under Count IV, against Defendant MIKHAIL BORISOVICH FEDOTOV, the sum of $3,977,273.50  plus interest, fees and other charges all as specified in the Note and Guaranty, and for attorney's fees and costs under the Guaranty;

5.      For and award of all attorney's fees, costs, and expenses incurred by Plaintiff from all Defendants, jointly and severally, in connection with enforcement of its rights herein, in an amount to be determined and allowed by the Court; and

6.      Any and all further relief, legal or equitable, to which Plaintiff may be entitled.

DATED:  Honolulu, Hawai'i, October 26, 2018.

    _/s/  Johnathan C. Bolton_____
    JOHNATHAN C. BOLTON
    CHRISTOPHER ST. SURE
    DYLAN J. TASCHNER

    Attorneys for Plaintiff
    NEXTGEAR CAPITAL, INC.