## COMPROMISE AGREEMENT

This Compromise Agreement (the **"Agreement"**) is entered into by and among NextGear Capital, Inc. (**"NextGear Capital"**) on one hand, and Envy Hawaii LLC (doing business as Volvo of Honolulu, Volvo Cars Honolulu, Envy Rent, Windward Motors, and V Rent a Car) (**"Dealer"**) and Mikhail Fedotov (**"Guarantor,"** and collectively with Dealer, **"Borrowers"**) on the other hand, and is effective as of the date of the most recent signature set forth below.

## RECITALS

A.     On or about September 4, 2015, Dealer executed a Demand Promissory Note and Loan and Security Agreement (together with any subsequent amendments or restatements thereto, the **"Note"**) in favor of NextGear Capital. **"CAPITALIZED"** terms inside quotation marks, which are not otherwise defined herein, shall have the meaning ascribed to them in the Note.

B.     To secure the indebtedness under the Note, (a) Dealer granted NextGear Capital a security interest in the **"Collateral,"** which NextGear perfected by filing a UCC-1 financing statement with the Hawaii Secretary of State, and (b) on or about September 4, 2015, Guarantor executed a personal guaranty of the indebtedness and obligations under the Note (the **"Guaranty"**).

C.     Pursuant to the Note and Guaranty, NextGear Capital provided a line of credit pursuant to which Borrowers could request loan **"Advances"** for Dealer's acquisition and/or retention of motor vehicle inventory under three (3) separate Finance Programs, which are: (1) a new car program (the **"New Car Program"**); (2) a rental car program (**"Rental Car Program"**), and (3) a used retail program (**"Used Car Program"**).

D.     As of June 15, 2017, Dealer is indebted to NextGear Capital as follows:

   i.     On the New Car Program, Three Million, Eight Hundred Sixty-Three Thousand, Five Hundred Twenty Three and 07/100 Dollars ($3,863,523.07) for seventy-three (73) vehicles, which are itemized on <u>Exhibit A</u> attached hereto and incorporated herein (collectively, the **"New Cars"**).

   ii.     On the Rental Car Program, Seven Hundred Twenty-Eight Thousand, Six Hundred Sixty-Three and 78/100 Dollars ($728,663.78) for twenty-six (26) vehicles, which are itemized on <u>Exhibit B</u> attached hereto and incorporated herein (collectively, the **"Current Rental Cars"**); and

   iii.     On the Used Car Program, Two Million, Four Hundred Fifty-Five Thousand, Eight Hundred Forty-Seven and 01/100 Dollars ($2,455,847.01) for seventy-four (74) vehicles, which are itemized on <u>Exhibit C</u> attached hereto and incorporated herein (collectively, the **"Used Cars"**),

The aggregate sum of the current indebtedness, as of June 15, 2017, under the New Car Program, the Rental Car Program, and the Used Car Program is therefore Seven Million, Forty-Eight

EXHIBIT "G"

Thousand, Thirty-Three and 86/100 Dollars ($7,048,033.86) for Dealer's acquisition and/or retention of One Hundred Seventy-Three (173) motor vehicles. The indebtedness under the Note at any time shall hereinafter be defined as the "**Indebtedness.**"

E.      As of June 15, 2017, Dealer sold at least fifteen (15) units of Lender Financed Inventory out of trust, meaning that the unit was sold and the proceeds from the sale were not remitted to NextGear Capital as required under Sections 4(f) and 5(o) of the terms of the Note. The units sold out of trust are identified in **Exhibit D** attached hereto and incorporated herein (the "**SOT Units**"). As of June 15, 2017, the balance owed by the Dealer to NextGear Capital on the SOT Units is Five Hundred Twenty-Nine Thousand, Five Hundred Eighty-Three and 37/100 Dollars ($529,583.37).

F.      The Parties are in a dispute concerning (1) allegations of NextGear Capital that Borrowers materially breached the terms of the Note by, inter alia, selling vehicles out of trust, and (2) allegations of Borrowers that NextGear Capital materially breached the terms of the Note by, inter alia, overcharging for interest and fees (collectively, the "**Disputes**").

G      Dealer is attempting to obtain a substitute lender to pay-off the Indebtedness, in full, and Borrowers have committed to obtaining such financing on or before August 1, 2017.

H.      Without admitting liability, the Parties wish to equitably and amicably, on the terms, conditions, and covenants contained herein, resolve the Disputes.

NOW, THEREFORE, NextGear Capital and Borrowers (collectively, the "**Parties**") agree as follows:

1.      **RATIFICATION OF LOAN DOCUMENTS.**

The Note and the "**Loan Documents**" are hereby incorporated by reference and made a part hereof. Except as expressly modified herein, all of the terms, provisions, requirements, and specifications contained in the Note and the Loan Documents shall remain in full force and effect. The Parties do not intend, and the execution of this Agreement shall not, in any manner impair the Note or any of the Loan Documents.

2.      **COMPROMISE PAYMENT AMOUNT.**

Borrowers shall pay all interest, fees, principal, or other amounts due under the Note in the manner proscribed by the Note and the Loan Document, except as set forth below:

A.      Pay-Off.  On or before August 1, 2017, Borrowers shall pay, or shall cause to be paid, all then-existing (as of the date of payment) Indebtedness to NextGear Capital.

B.      Credit. Solely in the event that Borrowers comply with Section 2(A) above, Borrowers shall receive a credit against the Indebtedness in the amount of Two Hundred Thousand and no/100 Dollars ($200,000.00).

C.      No Maturity. With respect to any vehicle that is no longer eligible for a

"**Curtailment**," Dealer shall not be required to repay any additional portion of the principal balance owed for such vehicle, until such vehicle is sold (in which event the vehicle shall be paid in accordance with Section 4(f) of the Note) or August 1, 2017, whichever is earlier.

3.      **CONDITIONAL FORBEARANCE.**

Conditioned upon Borrowers' strict compliance with the terms, conditions, and other covenants contained within this Agreement, NextGear Capital agrees to forbear from exercising its rights under Section 7 of the Note until the earliest of August 1, 2017, or on the date that a "Termination Event" arises. A Termination Event shall be deemed to have arisen if: (i) Borrowers breach any term, condition, or covenant contained herein; (ii) any new Event of Default shall occur under the Note, or other Loan Documents; or (iii) any of the representations and warranties contained herein are false, or otherwise fail. The period between the date of the execution of this Agreement and the expiration of the forbearance shall be referred to as the "**Forbearance Period.**"

Notwithstanding Section 2 above, upon expiration of the Forbearance Period described herein, all amounts owed by Borrowers to NextGear Capital under the Loan Documents shall be immediately payable in full, and NextGear Capital may exercise its respective rights and remedies under the Loan Documents, this Agreement and applicable law, without the requirement of any further notice or other action by NextGear Capital.

4.      **TRANSFER OF VEHICLES TO RENTAL PROGRAM.**

The motor vehicles identified on Exhibit E attached hereto (the "**Additional Rental Cars**") shall be transferred from the New Car Program or the Used Car Program (as applicable) to the Rental Car Program. The Additional Rental Cars and the Current Rental Cars (as defined in Recital (D)(ii), above) shall collectively be referred to as the "**Rental Cars**").

5.      **DEALER PERFORMANCE.**

In addition to, and not in lieu of, the terms, conditions, and covenants contained within the Loan Documents, Borrowers shall perform the following or cause the following to be performed:

A.      Payment of Obligations. Borrowers shall make all payments to NextGear timely, including interest, principal fees, or otherwise, pursuant to the terms of the Note and the Loan Documents.

B.      Onboard Diagnostics. NextGear Capital may, in its sole discretion, provide the Dealer with on-board diagnostic products ("OBDs") for any or all of the "**Lender Financed Inventory.**" The Debtor shall install the OBDs in the particular vehicles identified by NextGear Capital. An OBD may not be removed from any vehicle unless (a) NextGear provides its express, written consent; (b) the vehicle is sold; or (c) exigent circumstances exist which require the removal of the OBD, in which event the Debtor shall promptly notify NextGear Capital in writing regarding the reason for removal of the OBD. In the event an OBD is removed from any vehicle, that vehicle shall be considered sold if the OBD is not reinstalled within twelve (12) hours from removal, unless the Debtor promptly provides NextGear Capital with an affidavit stating that the

vehicle has not been sold and identifying the reasons why the OBD was removed. It is expressly understood and agreed that all OBDs provided by NextGear Capital shall remain the sole property of NextGear Capital, and shall be promptly returned to NextGear Capital upon the sale of any vehicle into which the OBD was installed, or upon NextGear Capital's request. It is further understood and agreed that the use of the OBDs is for the sole and exclusive benefit of NextGear Capital.

C.    Take-Out Agreement.    Borrowers shall use reasonable diligence to cause Bank of Hawaii or another financial institution to provide a written commitment to loan money to Dealer, immediately available in full, in an amount not less than the then-existing Indebtedness. Borrowers shall keep NextGear Capital reasonably apprised of their efforts to obtain financing.

D.    Perfection of Security Interests.    Upon NextGear Capital's request, Borrowers shall execute such instruments or documents as are necessary and appropriate, in NextGear Capital's reasonable discretion, to maintain a perfected security interest of NextGear Capital in and to the Collateral.

E.    Prohibition against Renting New Cars and Used Cars.    Excluding the Rental Cars, Dealer shall not rent any unit of Lender Financed Inventory for any purpose whatsoever.

F.    No Trade-Ins.    Except as expressly agreed upon by NextGear Capital, Dealer shall not accept any vehicle as a "trade-in" as payment for any Unit of Lender Financed Inventory.

G.    Test Drives and "Demo Vehicles".    Except as expressly agreed upon by NextGear Capital in writing or in Section 5(H) below, all Lender Financed Inventory shall remain on Dealer's car lot at all times unless a vehicle is sold, rented, or on a test drive. Borrowers shall not permit any consumer to test drive a vehicle overnight.

H.    Service Loaners.    Notwithstanding Section 5(G), Dealer may permit up to twelve (12) Units of Lender Financed Inventory to be used as "service loaners" to consumers whose cars are being serviced or repaired by Dealer. Any such vehicle shall be a Rental Vehicle, unless otherwise agreed by NextGear Capital.

I.    Reporting Requirements.    Upon request from NextGear Capital, at any time and from time to time, Dealer shall promptly produce financial documentation concerning the financial condition of the Borrowers. Without limiting the generality of the foregoing, Borrowers shall provide or shall cause to be provided the following documentation: (i) on a daily basis, (a) bills of sale pertaining to any sold Collateral, (b) "funding notices" from consumer lenders reflecting funds received by Dealer from sold Collateral, and (c) rental agreements for all Rental Vehicles, along with a copy of the respective consumers' driver's licenses; and (ii) on a weekly basis, bank statements for all accounts into which Borrowers deposit proceeds.

J.    Audits and Inspections.    NextGear Capital or its agents and representatives may, at any time and from time to time, enter Dealer's business premises during regular business hours for the purposes of inspecting its inventory, and inspecting Dealer's books and records.

K.     <u>Bank Accounts</u>. The sole financial institution Dealer shall use for its deposit accounts, investment or other accounts, shall be Bank of Hawaii.

## 6.     <u>SUSPENSION OF VOLVO LINE.</u>

Upon execution of this Agreement and NextGear Capital's confirmation that Dealer is in compliance with Section 4(f) of the Note, NextGear Capital shall send the correspondence to Volvo USA, duly-executed by an agent of NextGear Capital with appropriate corporate authority, attached hereto as <u>Exhibit F</u>. NextGear Capital shall not provide financing for any vehicle except for the vehicles identified in <u>Exhibit G</u>. NextGear Capital shall not suspend its funding agreement with Volvo USA until and unless a Termination Event arises.

Notwithstanding the foregoing, NextGear Capital remains a discretionary lender, and shall not be required to provide Advances for any motor vehicles except those identified in Exhibit F.

## 7.     <u>REPRESENTATION AND WARRANTIES.</u>

In addition to the representation and warranty made in Section 3(D) of the Note, the Borrowers represent and warrant to NextGear Capital, on which NextGear Capital is reasonably relying, the following:

A.     <u>Recitals</u>. The Recitals set forth above are acknowledged by Borrowers as true and correct, and for all purposes shall be interpreted as being an integral part of this Agreement.

B.     <u>No Defenses</u>. Borrowers acknowledge that: (1) the Loan Documents are valid and binding agreements enforceable by their terms, and are not subject to any real or personal defenses, counterclaim, or set-off; (2) the Indebtedness is secured by a non-avoidable, perfected, first priority lien and security interest in the Collateral; and (3) NextGear Capital has an immediate and absolute right, without any further delay or the occurrence of any conditions precedent, to demand payment of the entire Indebtedness from the Borrowers, and to exercise all rights and remedies in accordance the Loan Documents, the Uniform Commercial Code, and otherwise at law or equity.

C.     <u>No Novation</u>. This Agreement shall not constitute a novation or an accord and satisfaction of the Note, the Guaranties, or the other Loan Documents.

D.     <u>No Course of Dealings Established/Discretionary Loans</u>. The execution of this Agreement shall not constitute a "course of dealings" among the Parties with respect to amending, modifying, or extending this Agreement or the Loan Documents in the future. Borrowers recognize, acknowledge, and agree that NextGear Capital may lawfully refuse any future requests to amend or modify this Agreement or the Loan Documents, and there shall be neither an implied or express covenant of good faith and fair dealing on behalf of NextGear Capital. NextGear Capital shall remain a discretionary lender, and reserves the right to determine whether or not to make any Advance under the Note in its sole and complete discretion.

E.     <u>Ownership of Dealer Owned Units</u>. Dealer has good and marketable title to all of

the motor vehicles identified on Exhibit H attached hereto and incorporated herein ("**Dealer Owned Units**"). Dealer represents and warrants to NextGear Capital that the Dealer Owner Units are free and clear of all liens, claims, interests and encumbrances, including, without limitation, any claims of consignors or consumer purchasers.

### 8. RELEASE.

As additional consideration for this Agreement, this Agreement shall constitute a release by Borrowers, in which Borrowers, on behalf of themselves, and their respective current and former agents, representatives, successors in interest, assigns, affiliates, predecessors, parents and subsidiaries, and all those acting on their behalf, RELEASE and FOREVER DISCHARGE NextGear Capital and all of its current and former agents, employees, partners, officers, servants, directors, attorneys, affiliates, parents, subsidiaries, predecessors, successors-in-interest and assigns, none of whom admit any liability, from any and all claims, demands, damages, indebtedness, action, and causes of action, known or unknown, on account of, arising out of, or in any way connected with the Loan Documents, the Indebtedness, this Agreement, or otherwise to the contractual relationships among the Parties.

### 9. ASSIGNMENT.

This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, assigns, legal representatives, and successors-in-interest.

### 10. MERGER.

This Agreement represents the entire agreement between the Parties concerning the limited forbearance being granted hereunder and/or the resolution of the Disputes. There are no other written or oral agreements between the Parties which purport to grant limited forbearance, and no promise, enticement or agreement not herein expressed has been made.

### 11. CHOICE OF LAW AND FORUM.

This Agreement shall be governed by, construed by, and enforced in accordance with the laws of the State of Indiana. Without limiting the effect of Section 1 above, the BORROWERS SUBMIT TO THE PERSONAL JURISDICTION AND VENUE OF THE STATE AND FEDERAL COURTS OF MARION COUNTY AND HAMILTON COUNTY, INDIANA, AND AGREE THAT ANY AND ALL CLAIMS OR DISPUTES PERTAINING TO THIS AGREEMENT, OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT, INITIATED BY ANY OR ALL BORROWERS AGAINST NEXTGEAR CAPITAL, SHALL BE BROUGHT IN THE STATE OR FEDERAL COURTS OF MARION COUNTY OR HAMILTON COUNTY, INDIANA. FURTHER, BORROWERS EXPRESSLY CONSENT TO THE JURISDICTION AND VENUE OF THE STATE AND FEDERAL COURTS OF MARION COUNTY AND HAMILTON COUNTY, INDIANA, AS TO ANY LEGAL OR EQUITABLE ACTION THAT MAY BE BROUGHT IN SUCH COURT BY NEXTGEAR CAPITAL, AND WAIVES ANY OBJECTION BASED UPON LACK OF

PERSONAL JURISDICTION, IMPROPER VENUE, OR FORUM NON CONVENIENS WITH RESPECT TO SUCH ACTION. BORROWERS FURTHER ACKNOWLEDGE AND AGREE THAT NEXTGEAR CAPITAL RESERVES THE RIGHT TO INITIATE AND PROSECUTE ANY ACTION AGAINST ANY OR ALL BORROWERS IN ANY COURT OF COMPETENT JURISDICTION, AND DEBTOR CONSENTS TO SUCH FORUM AS NEXTGEAR CAPITAL MAY ELECT.

**12.   WAIVER INEFFECTIVE.**

No waiver, modification, or amendment of any term, condition, or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by all Parties to this Agreement.

**13.   SEVERABILITY.**

Should any provision of this Agreement be held invalid or illegal, such invalidity or illegality shall not invalidate the whole of this Agreement, but rather the Agreement shall be construed as if it did not contain the invalid or illegal part, and the rights and obligations of the Parties shall be construed and enforced accordingly.

**14.   SURVIVAL.**

The representations, warranties, covenants, and consideration provided by the Borrowers under this Agreement shall survive the termination of this Agreement.

**15.   NO PRESUMPTION AGAINST DRAFTER.**

Each of the Parties has jointly participated in the negotiation and drafting of this Agreement.  In the event of an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by each of the Parties hereto an no presumptions or burdens of proof shall arise favoring either Party by virtue of the authorship of any provisions of this Agreement.

**16.   SIGNATORY WARRANTY.**

Each of the individuals executing this Agreement as agent on behalf of a principal represent and warrant, in their respective individual capacities, that he or she has full power and agency authority to enter into this Agreement and bind his or her respective principal, that all necessary consents and approvals have been obtained, and that no other consent, approval or action is required.

**17.   NOTICES.**

Unless otherwise instructed by NextGear Capital in writing, all notices or reports under this Agreement shall be sent by e-mail to Christopher M. Trapp, Director of Recovery for NextGear Capital, at chris.trapp@nextgearcapital.com.

18.     **EXECUTION.**

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

19.     **SUBSTITUTE COLLATERAL.**  To resolve the dispute regarding the SOT Units, the Dealer Owned Units shall be added to the New Car Program, the Rental Car Program, and the Used Car Program as applicable, and shall constitute NextGear Capital's Collateral as that term is defined in the Note.  Borrower grants to NextGear Capital a first priority security interest in the Dealer Owned Units, and all additions, accessions, accessories, replacements, substitutions, and proceeds of the Dealer Owned Units.

**[Remainder of Page Intentionally Blank – Signature Page to Follow]**

**IN WITNESS WHEREOF,** the undersigned agree to all terms of this Agreement.

**NextGear Capital, Inc.**

By: _____          6/19/2017
Christopher M. Trapp                          ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Director of Recovery                          DATE

**Envy Hawaii LLC d/b/a Volvo of Honolulu**

/s/: _____          06/15/2017
                                              ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
By:  Mike Fedotov                             DATE

Title:  MANAGER

**Mikhail Fedotov, Individually**

/s/ _____           06/15/2012
                                              ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                                              DATE