STARN ● O'TOOLE ● MARCUS & FISHER
A Law Corporation

MARK J. BENNETT                    2672-0
ANDREW J. LAUTENBACH               8805-0
733 Bishop Street, Suite 1900
Pacific Guardian Center, Makai Tower
Honolulu, Hawaii 96813
Telephone: (808) 537-6100
mbennett@starnlaw.com
alautenbach@starnlaw.com

HOGAN LOVELLS US LLP

JOHN J. SULLIVAN (*pro hac vice*)
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
john.sullivan@hoganlovells.com

COLM A. MORAN (*pro hac vice*)
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
colm.moran@hoganlovells.com

RYAN L. FORD (*pro hac vice*)
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
ryan.ford@hoganlovells.com

Attorneys for Defendant/Counterclaim Plaintiff
VOLVO CAR USA LLC

EXHIBIT "J"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br><br>Plaintiff,<br><br>vs.<br><br>VOLVO CAR USA LLC,<br><br>Defendant. | CIVIL NO.  17-00040 HG/KSC<br><br>**DEFENDANT'S MOTION FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COUNTERCLAIM; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF JOHN J. SULLIVAN; EXHIBITS A-B; CERTIFICATE OF SERVICE** |
| VOLVO CAR USA LLC,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br>Counterclaim Defendant,<br>and<br><br>MIKHAIL FEDOTOV,<br>Additional Counterclaim Defendant. | TRIAL DATE:  November 6, 2018<br>TRIAL JUDGE:  Hon. Helen Gillmor |

**DEFENDANT'S MOTION FOR LEAVE TO FILE**
**SECOND AMENDED AND SUPPLEMENTAL COUNTERCLAIM**

Defendant/Counterclaim Plaintiff Volvo Car USA LLC ("VCUSA"), by and

through its attorneys, and based upon information it has obtained, and events that

have occurred, subsequent to the filing of its motion to file its current Amended and Supplemental Counterclaim in this case on October 27, 2017, respectfully moves this Court for leave to file a Second Amended and Supplemental Counterclaim, a copy of which is attached as Exhibit A to this Motion. A redlined version of the proposed Second Amended and Supplemental Counterclaim, reflecting the changes to the Amended and Supplemental Counterclaim, is attached hereto as Exhibit B.

This motion is brought pursuant to Rule 15 of the Federal Rules of Civil Procedure and is brought within the time period permitted in paragraph 5 of the Court's Second Amended Rule 16 Scheduling Order, entered on November 21 2017 (Dkt. 62.) This motion is supported by Defendant's Memorandum of Law in Support of Motion to Amend and Supplement Its Counterclaim and by the records and files of the above-entitled action, all of which are incorporated herein by this reference.

Dated: Honolulu, Hawaii, April 6, 2018.

/s/ Mark J. Bennett
MARK J. BENNETT
ANDREW J. LAUTENBACH
JOHN J. SULLIVAN
COLM A. MORAN
RYAN L. FORD

Attorneys for Defendant/Counterclaim
Plaintiff VOLVO CAR USA LLC

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br><br>                Plaintiff,<br><br>vs.<br><br>VOLVO CAR USA LLC,<br><br>                Defendant. | CIVIL NO.  17-00040 HG/KSC |
| VOLVO CAR USA LLC,<br><br>           Counterclaim Plaintiff,<br><br>vs.<br><br>ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br>           Counterclaim Defendant,<br>and<br><br>MIKHAIL FEDOTOV,<br>       Additional Counterclaim Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION**

Defendant/Counterclaim Plaintiff Volvo Car USA LLC (the "**VCUSA**") respectfully submits this memorandum of law in support of its motion for leave to file a Second Amended and Supplemental Counterclaim.  A copy of the proposed Second Amended and Supplemental Counterclaim is annexed to the motion as Exhibit A.  A redlined version of the proposed pleading, reflecting the changes

made to the current Amended and Supplemental Counterclaim, is attached to the

motion as Exhibit B. This motion is timely filed pursuant to paragraph 5 of the

Second Amended Rule 16 Scheduling Order entered by the Court on November

21, 2017 (Dkt. 62.)

## **BACKGROUND**

VCUSA's current Counterclaim, filed on November 13, 2017 (Dkt. 60),

asserts nine claims against plaintiff Envy Hawaii, LLC ("**Envy**"), a Volvo dealer

located in Honolulu, and/or Additional Counterclaim Defendant, Mikael Fedotov

("**Fedotov**"), the owner of Envy, as follows:

> **First Counterclaim** – Envy and Fedotov fraudulently induced VCUSA to enter into a Volvo Authorized Retailer Agreement ("**ARA**") with Envy in 2012 by materially misrepresenting Fedotov's financial condition.

> **Second Counterclaim** – Envy and Fedotov fraudulently induced VCUSA to approve the transfer of sole ownership of the dealership to Fedotov in 2014 by materially misrepresenting Fedotov's financial condition.

> **Third and Fourth Counterclaims** – Envy fraudulently altered certain standard provisions of the renewal ARA that VCUSA offered to Envy in July 2016, entitling VCUSA to relief from the altered provisions and to damages.

> **Fifth Counterclaim** – Envy breached the ARA by not paying $149,020.37 it owed to VCUSA as of November 2017.

> **Sixth Counterclaim** – Envy breached the standard provisions of the ARA and the implied covenant of good faith and fair dealing by surreptitiously altering certain of the standard provisions of the July 2016 ARA.

**Seventh Counterclaim** – Envy breached the federal wiretapping statute by surreptitiously recording the confidential proceedings at a Volvo Retailer Conference in Yountville, California.

**Eighth Counterclaim** – Envy breached California Penal Code §§ 632 and 632.7 by surreptitiously recording the Retailer Conference and at least seven (7) telephone conversations with VCUSA representatives located in California.

**Ninth Counterclaim** – Envy breached the ARA by engaging in unfair, misleading, deceptive, or fraudulent trade practices in dealing with Volvo customers.

VCUSA now seeks to amend the Fifth Counterclaim and the Ninth Counterclaim and to add Tenth and Eleventh Counterclaims. All of these claims are asserted against Envy only.

With respect to the Fifth Counterclaim, VCUSA seeks to update the amount owed and not paid by Envy to VCUSA on its open account, which now amounts to $213,538.08.

VCUSA seeks to supplement the Ninth Counterclaim with allegations of additional instances in which Envy has dealt with Volvo customers in an unfair, misleading, deceptive, or fraudulent manner, and of which VCUSA became aware after it filed its motion to leave to amend its original counterclaim on October 27, 2017 (Doc. 54). Since that time, VCUSA has learned of two additional customers whose loans on trade-ins (one in the amount of $8,900 and the other in the amount of approximately $28,000) were not paid off by Envy. See Exhibit A, ¶¶ 74-75.

VCUSA has also received complaints from four customers that Envy has failed to supply them with the necessary documents that the customers need to register vehicles that they purchased or leased from Envy with the state of Hawaii.  See Exhibit A, ¶¶ 76-78.  VCUSA believes that discovery in this case will uncover additional instances in which Envy has committed similar violation of customers' rights, but wishes to add these specific incidents now to give Envy fair notice that VCUSA may use them to support its claim.

The proposed new Tenth Counterclaim arises out of the termination of Envy's ARA, which occurred in December 2017.  As a result of Envy's repeated violations of the rights of Volvo customers, VCUSA issued a notice of termination to Envy on December 1, 2017.  Rather than contest VCUSA's grounds for termination and seek a stay, Envy closed its doors on or about December 12, 2017.  Shortly thereafter, Envy learned that VCUSA intended to appoint the Cutter automotive group as its new Volvo dealer in Hawaii.  On or about December 29, 2017, an Envy employee registered the URL and domain name cuttervolvocars.com, thereby effectively preventing VCUSA's new dealer from using that domain name to market Volvo products on the internet.  See Exhibit A, ¶¶ 98-102.

Envy has disclaimed responsibility for its employee's act and failed to comply with VCUSA's demands that the domain name be surrendered.  In

registering the domain name, however, the Envy employee (1) stated that the organization registering the name was "Envy Rent," which Envy has represented in this litigation is simply a trade name or "doing business as" name for Envy itself; and (2) registered the domain name using the same phone number used by Envy Hawaii LLC f/d/b/a Volvo Cars of Honolulu and an email address of counterclaim defendant Mikhail Fedotov, the President and sole owner of Envy (Mike@envyag.com). Accordingly, VCUSA has more than ample basis for alleging that Envy is responsible for the registration of the domain name, which constitutes a violation of Envy's post-termination obligations under the ARA and of 15 U.S.C. § 1125(d). See Exhibit A, ¶¶ 103-106, 173-176.

The proposed new Eleventh Counterclaim also arises out of Envy's termination. Long before the termination, Envy had defaulted on its obligation to repay millions of dollars to its floor plan lender, NextGear Capital ("NGC"). Envy's vehicle inventory served as security for Envy's borrowings from NGC. It is VCUSA's understanding that NGC had agreed to forbear on seizing the vehicles in the hope that Envy would sell its Volvo dealership and use the proceeds to repay NGC. Following Envy's termination, however, NGC took possession of Envy's vehicle inventory. See Exhibit A, ¶¶ 108-109.

VCUSA thereafter purchased from NGC 29 new, unsold Volvo vehicles which it had previously wholesaled to Envy and on which it had previously made

bonus payments to Envy in the aggregate amount of $73,940.10 pursuant to a "Margin and Bonus Program" maintained by VCUSA.  The purpose of the bonus payments was to assist Envy in retailing the vehicles.  VCUSA thereafter re-wholesaled the 29 new Volvo vehicles to Cutter Volvo and, pursuant to the Margin and Bonus Program, gave Cutter Volvo the same bonus payments of $73,940.10.  Because Envy did not use the bonus payments for their intended purpose – to assist in retailing the vehicles – and because VCUSA had to pay the same bonus to Cutter Volvo upon re-wholesaling the vehicles, VCUSA seeks to recover the $73,940.10 from Envy on theories of unjust enrichment and/or money had and received.

## ARGUMENT

## LEAVE TO AMEND AND SUPPLEMENT SHOULD BE GRANTED

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires."  Similarly, Rule 15(d) provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  The Supreme Court has emphasized that Rule 15's "mandate" that leave shall be freely given "is to be heeded," and has established the following rule:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Similarly, the Ninth Circuit has stated that "Rule 15's policy of favoring amendments should be applied with 'extreme liberality.'"  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

None of the reasons that might justify denial of leave is present here.

First, VCUSA has not unduly delayed in making this motion.  The Second Amended Rule 16 Scheduling Order entered by this Court on November 21, 2017 (Doc. 62), permits amendments of pleadings up to and including April 6, 2018,  the date of filing of this motion.  The supplemental allegations and claims that VCUSA seeks to add involve events that have occurred, or that VCUSA learned about, after VCUSA filed its prior motion to amend and supplement its counterclaims on October 27, 2017.  (Doc. 54).

Second, VCUSA does not have any bad faith or dilatory motive in making this motion.  VCUSA's new allegations involve Envy's violations of  its obligations to Volvo customers and VCUSA.  Moreover, the new claims are similar to and/or related to claims in the current Counterclaim, so the parties can conduct discovery on them along with the claims that have previously been

pleaded.  No depositions have yet been taken in this case, so there will be no need to re-depose any witness on the new claims.

Third, VCUSA is not seeking to cure deficiencies in its current Counterclaim and has not previously moved to amend its Counterclaim to cure any deficiencies.  Indeed, Envy has never claimed that there were any deficiencies in VCUSA's previously-filed Counterclaims, and so VCUSA has not been required to cure any deficiencies.

Fourth, Envy will not be "unduly prejudiced" by the amendments.  As explained above, there is no reason why the parties cannot conduct full discovery on these claims and be prepared to try them with the claims previously pleaded.

Finally, the supplemental claims are not futile. The Fifth and Ninth Counterclaims are merely being supplemented to add additional similar breaches of the ARA that have occurred, or of which VCUSA has learned, since filing its prior motion to amend and supplement on October 27, 2017. Envy's alleged registration of the cuttervolvocars.com domain name, if proved, clearly amounts to "cyberpiracy" in violation of 15 U.S.C. § 1125(d).  And Envy's receipt and retention of bonus payments made for the purpose of retailing vehicles that Envy never retailed, and which VCUSA was required to duplicate when it re-wholesaled the same vehicles to Cutter Volvo, provides a basis for VCUSA to seek restitution of the bonus payments made to Envy.

## CONCLUSION

For all of the foregoing reasons, VCUSA's motion for leave to file its Second Amended and Supplemental Counterclaim should be granted.

Dated: Honolulu, Hawaii, April 6, 2018.

                    /s/ Mark J. Bennett
                    MARK J. BENNETT
                    ANDREW J. LAUTENBACH
                    JOHN J. SULLIVAN
                    COLM A. MORAN
                    RYAN L. FORD

                    Attorneys for Defendant/Counterclaim
                    Plaintiff VOLVO CAR USA LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ENVY HAWAII LLC dba VOLVO CARS HONOLULU, | CIVIL NO. 17-00040 KSC |
| Plaintiff, | |
| vs. | |
| VOLVO CAR USA LLC, | |
| Defendant. | |
| VOLVO CAR USA LLC, | |
| Counterclaim Plaintiff, | |
| vs. | |
| ENVY HAWAII LLC dba VOLVO CARS HONOLULU, | |
| Counterclaim Defendants, | |
| and | |
| MIKHAIL FEDOTOV, | |
| Additional Counterclaim Defendant. | |

**DECLARATION OF JOHN J. SULLIVAN IN SUPPORT OF
DEFENDANT'S MOTION FOR LEAVE TO FILE
SECOND AMENDED AND SUPPLEMENTAL COUNTERCLAIM**

I, John J. Sullivan, declare:

1.     I am an attorney admitted to practice in the state of New York and am

co-counsel   to   Defendant/Counterclaim   Plaintiff   Volvo   Car   USA,   LLC

1

("VCUSA"), having been admitted by this Court pro hac vice.  I make this declaration in support of VCUSA's Motion for Leave to file a Second Amended and Supplemental Counterclaim.  I am competent to make this declaration, and do so based upon personal knowledge, except as otherwise stated.

2.     In paragraph 5 of the Second Amended Rule 16 Scheduling Order entered by this Court on November 27, 2017 (Doc. 62), the Court set April 6, 2018 as the deadline for amendments to pleadings. Accordingly, this motion is timely filed.

3.     VCUSA filed its prior motion to amend and supplement its original Counterclaim in this case on October 27, 2017 (Doc. 54).  By this motion, VCUSA seeks to (a) update the Fifth Counterclaim, in which VCUSA sought recovery of $149,020.37 owed to it by Plaintiff Envy Hawaii, LLC ("Envy") on its open account as of November 2017, to seek recovery of the amount currently owed by Envy, $213,530.08; (b) to supplement its  Ninth Counterclaim, in which VCUSA seeks relief for Envy's violations of its obligation not to deal with Volvo customers in an unfair, misleading, deceptive, or fraudulent manner, with allegations of additional instances in which Envy has violated the rights of Volvo customers, of which VCUSA has become aware since filing its prior motion to amend on October 27, 2017; (c) to add a Tenth Counterclaim relating to Envy's alleged

2

registration of the URL and domain name "cuttervolvocars.com" after learning that VCUSA intended to appoint Cutter as its new authorized Volvo dealer in Hawaii following the demise of Envy's Volvo dealership; and (d) to seek restitution of certain bonus payments that VCUSA made to Envy for new Volvo vehicles that VCUSA originally wholesaled to Envy but re-wholesaled to Cutter Volvo following the closure of Envy's dealership.

4.     The amendment to the Fifth Counterclaim is based on the aggregate amount showing as owed to VCUSA by Envy on the parts account statements between Envy and VCUSA as of April 2018.

5.     The supplements to the Ninth Counterclaim are based on additional instances of violations of Volvo customer rights of which VCUSA learned after filing its prior motion to amend and supplement October 27, 2017. See Exhibit A, ¶¶ 74-78.

6.     The new Tenth Counterclaim is based on Envy's alleged registration, on or about December 29, 2017, of the URL and domain name cuttervolvocars.com.  As detailed in the proposed amended and supplemental pleading, Envy closed its doors on or about December 12, 2017, following its receipt of a December 1, 2017 notice of termination from VCUSA based on Envy's repeated violations of its obligation to treat customers fairly and without

3

engaging in misleading, deceptive, or fraudulent conduct. Shortly after Envy's closure, VCUSA decided to appoint the Cutter automotive group as its new Volvo dealer in Hawaii. According to public records, an Envy employee registered the domain name on December 29, 2017. Such registration prevents Cutter Volvo from using that domain name to market Volvo products on the internet. Envy has failed to comply with VCUSA's demands that the domain name be canceled, claiming that it is not responsible for the registration even though it was made by an Envy employee, in one of Envy's own trade names, using Envy's phone number and an email address of its President and sole owner, counterclaim defendant Mikhail Fedotov. See Exhibit A, ¶¶ 98-106, 173-176.

7.    The new Eleventh Counterclaim seek restitution of bonus payments that VCUSA made to Envy upon wholesaling certain new Volvo vehicles to Envy while Envy was still an authorized Volvo dealer, but which VCUSA repurchased from Envy's floorplan lender following Envy's termination and which VCUSA then re-wholesaled to Cutter Volvo, thereby incurring a duplicative bonus payment to Cutter. See Exhibit A, ¶ 107-112, 178-184.

8.    This motion is not motivated by bad faith or dilatory motive. VCUSA is seeking to supplement the Fifth and Ninth Counterclaim, as of the April 16, 2018 deadline for filing amended pleadings, so that the amounts at issue are

4

brought up to date and so that Envy is informed of additional specific instances of violations of consumer rights that VCUSA may use to support its claim. The new Tenth and Eleventh Counterclaims involve events that occurred after Envy's closure in December 2017. As detailed in the proposed amended pleading, VCUSA attempted to see if issues raised by the Tenth Counterclaim could be resolved without judicial intervention, but this effort has proved unsuccessful. See Exhibit A, ¶ 105.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 5, 2018.

John J. Sullivan

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 1 of 49   PageID #:
565
Case 1:18-cv-00415-DKW-RT   Document 1-16   Filed 10/26/18   Page 18 of 120   PageID.137

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br><br>              Plaintiff,<br><br>vs.<br><br>VOLVO CAR USA LLC,<br><br>              Defendant. | CIVIL NO.  17-00040 HG/KSC<br><br>**VOLVO CAR USA LLC'S SECOND AMENDED AND SUPPLEMENTAL COUNTERCLAIM AGAINST ENVY HAWAII LLC dba VOLVO CARS HONOLULU AND MIKHAIL FEDOTOV** |

VOLVO CAR USA LLC,

      Counterclaim Plaintiff,

vs.

ENVY HAWAII LLC dba VOLVO
CARS HONOLULU,
      Counterclaim Defendant,
and

MIKHAIL FEDOTOV,
      Additional Counterclaim Defendant.

**Exhibit A**

**VOLVO CAR USA LLC'S SECOND AMENDED AND SUPPLEMENTAL COUNTERCLAIM AGAINST ENVY HAWAII LLC dba VOLVO CARS HONOLULU AND MIKHAIL FEDOTOV**

Defendant/Counterclaim Plaintiff Volvo Car USA, LLC ("VCUSA"), by its undersigned attorneys, for its Counterclaims against Plaintiff/Counterclaim Defendant Envy Hawaii LLC d/b/a Volvo Cars Honolulu ("Envy") and Additional Defendant on Counterclaim Mikhail Fedotov ("Fedotov" and, collectively with Envy, the "Counterclaim Defendants"), alleges as follows:

## THE PARTIES

1. VCUSA is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Rockleigh, New Jersey.

2. VCUSA is the successor-in-interest to the rights and business assets of its direct parent, Volvo Cars of North America, LLC ("VCNA"), including all contracts and claims referred to herein. Both VCUSA and VCNA are wholly-owned subsidiaries of Volvo Car Corporation, the manufacturer of Volvo products.

3. Upon information and belief, Envy is a limited liability company organized and existing under the laws of the State of Hawaii, with its principal place of business in Honolulu, Hawaii.

4. Upon information and belief, Fedotov is a citizen of the Russian Federation and is currently a resident of Hawaii and the sole member of Envy.

2

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction over the Counterclaims pursuant to 28 U.S.C. § 1367, in that the Counterclaims are so related to the claims asserted in the Complaint that they form part of the same case or controversy.  This Court has independent subject-matter jurisdiction, under 28 U.S.C. § 1331, over VCUSA's Counterclaim under 18 U.S.C. § 2520(a) for Envy's unlawful interception of oral communications for the purpose of obtaining information relating to the operations of a business the operations of which affect interstate commerce, in violation of 18 U.S.C. § 2511(1)(b)(iv)(B).

6.     This Court has personal jurisdiction over the Counterclaim Defendants because they reside in the state of Hawaii.

7.     Venue is proper under 28 U.S.C. § 1391(b)(1) because the Counterclaim Defendants reside in this judicial district.

## ALLEGATIONS OF FACT

**A.      Background**

8.     VCUSA is the exclusive distributor of Volvo brand vehicles, parts and accessories ("Volvo Products") in the United States.

9.     VCUSA distributes Volvo Products in the United States through a network of independently-owned dealers who purchase Volvo Products from

VCUSA at wholesale and resell Volvo Products to, and service Volvo Products for, retail customers.

10.     VCUSA appoints dealers to sell and service Volvo Products at designated dealership locations by entering into a Volvo Authorized Retailer Agreement (an "ARA") with each such dealer.

11.     In the ARA, VCUSA is referred to as "Company" and the dealer is referred to as "Retailer."

**B.      The 2012 Authorized Dealer Agreement**

12.     On or about June 26, 2012, Envy entered into an Asset Purchase Agreement (the "APA"), pursuant to which it agreed to buy the Volvo dealership assets of Jackson Volvo, subject to the approval of VCNA.

13.     Pursuant to VCNA's standard procedures, Jackson Volvo submitted the APA, and Envy was required to submit an application, along with various related documents and information, to VCNA for its consideration in deciding whether or not to approve the proposal to sell the dealership to Envy.

14.     During the application process, Envy and Fedotov represented to VCNA that Envoy had five managing members who were making the following capital contributions and would own the following percentages of Envy: (i) Fedotov, contributing $1,000,338 and owning a 19.75% interest; (ii) Vladimir Franke, contributing $1,000,338 and owning a 19.75% interest; (iii) Evgeny

4

Barzov, contributing $1,506,838 and owning a 29.75% interest; (iv) Dmitri Polunin, contributing $1,506,838 and owning a 29.75% interest; and (v) Eric Roubentz, contributing $50,648 and owning a 1% interest. Envy proposed that Roubentz would serve as the general manager of the dealership.

15.    Envy and each of its members, including Fedotov, represented to VCNA that the source of each member's capital contribution was his own financial resources, and that none of the amount was borrowed.  Upon information and belief, however, a substantial portion of Fedotov's $1,000,338 contribution was borrowed, a fact that Fedotov failed to disclose to VCNA.  VCUSA's information and belief is based on a lawsuit filed against Fedotov by the lender (and Polunin and Barzov) on December 20, 2016.  Plaintiff learned of that lawsuit in February 2017.

16.    Relying on the false information submitted by Envy and Fedotov, VCNA approved Envy's application to purchase the assets of Jackson Volvo and become an authorized Volvo dealer.

17.    On or about December 10, 2012, Envy closed on its APA with Jackson Volvo and signed an ARA with VCNA (the "2012 ARA").

18.    The ARA is a standard form contract that VCUSA enters into with each of its authorized dealers.  It consists of introductory language, a Preamble,

5

and 55 numbered sections, and may contain attachments, schedules, and/or addenda.

19.    While the introductory language and Sections 1 through 7 of the ARA contain information concerning the specific dealer signatory, Sections 1 through 55 contain standard terms and conditions that apply to all Volvo dealers.

20.    VCUSA does not negotiate or modify the standard terms and conditions in Sections 1 through 55 for any of its dealers, for a number of reasons, including that (a) VCUSA believes that all of its authorized dealers should operate on the same terms and conditions; and (b) the relationship between motor vehicle distributors such as VCUSA and their authorized dealers is heavily regulated by the statutory law of the 50 states, and many of these state laws require distributors to afford the same terms and conditions to all of their dealers.

21.    Moreover, it is common knowledge in the industry that the standard provisions of a manufacturer's or distributor's dealer agreement are just that, standard, and are typically not subject to modification on an individual dealer basis.

C.    **The Transfer to Fedotov**

22.    In or about September 2014, Envy proposed to VCNA that the sole ownership of Envy would be transferred to Fedotov.

6

23.    In early December 2014, Fedotov submitted to VCNA an "Application for Authorized Retailer Agreement" in connection with the proposed ownership change.  Fedotov signed the application and dated it December 1, 2014. In signing the application, Fedotov represented that the information which he had provided was "correct and completed" and acknowledged that "this information will be relied upon by [VCNA] in processing my application."

24.    In the application, Fedotov represented that his "total liabilities" were $600,000, and that this $600,000 liability was for "Membership Interest Purchase Agreement for Envy Hawaii LLC."   Fedotov also submitted to VCNA three documents, each entitled a "Membership Interest Purchase Agreement," which collectively indicated that Fedotov was purchasing the interests of the other members in Envy for a total of $600,000.

25.    In reliance on Fedotov's representations, VCNA approved the change in Envy's ownership structure and the transfer of sole ownership to Fedotov.

26.    On February 20, 2015, Envy and VCNA signed a new ARA listing Fedotov as the sole owner and Manager of Envy (the "2015 ARA").  The 2015 ARA contained the same standard provisions as the 2012 ARA.

27.    Upon information and belief, Fedotov materially misrepresented to VCNA the amount of his total liabilities, and the price at which he had purchased the interests of the former co-owners of Envy.

28.     Upon information and belief, Fedotov actually agreed to pay the former co-owners, and had total liabilities equaling, well over $3 million. VCUSA's information and belief is based on the lawsuit referred to in paragraph 15 of these Counterclaims.

**D.      Envy's Fraudulent Alteration of the July 2016 ARA**

29.     On or about January 1, 2016, VCNA transferred its business assets, including all of its agreements referred to above, to VCUSA.

30.     VCUSA thereafter determined that, in connection with updating its Hawaii business license, its ARA with Envy should be updated to reflect VCUSA's status as the new contracting party.

31.     Accordingly, on or about July 7, 2016, VCUSA shipped three spiral-bound, duplicate originals of the ARA (the "July 2016 ARA") to Envy for execution.  The only differences in the standard terms and conditions between the 2015 ARA and the form of the July 2016 ARA shipped to Envy were (a) the change of the "Company" from VCNA to VCUSA; (b) certain minor revisions to the ARA's "Preamble"; and (c) certain revisions to the trademark provisions of the ARA.  (In November 2015, VCNA had notified all of its dealers that it was making these changes to the trademark provisions, and VCUSA incorporated them into any ARAs executed thereafter.)

32.     After receiving the duplicate originals of the July 2016 ARA, Envy surreptitiously made material changes to certain of the standard terms and provisions of the agreement before signing it.

33.     Upon information and belief, Envy undid the spiral binding of the duplicate originals and substituted certain pages of the documents with new pages, prepared in the same typeface, which altered material terms and conditions of the ARA.  Envy then redid the spiral binding to prevent VCUSA from detecting that the documents had been tampered with.

34.     Fedotov signed and returned the altered ARAs to VCUSA for countersignature without advising VCUSA that changes had been made to the standard terms and conditions of the agreement.

35.     In addition, before returning the altered ARAs to VCUSA, Envy emailed a copy of the signature page to VCUSA without disclosing that Envy had altered, or intended to alter, other pages of the document.

36.     After VCUSA received the altered July 2016 ARAs, its Regional Vice President, Michael Cottone, reasonably believing that the documents were in the same form as the agreements that VCUSA had sent to Envy for execution, countersigned the three documents for VCUSA without knowledge that Envy had made alterations to the standard terms and conditions of the ARA.

9

37.   VCUSA thereafter returned a countersigned copy of the altered July 2016 ARA to Envy.

38.   Upon information and belief, Fedotov signed the July 2016 ARA with knowledge that it had been surreptitiously altered.

39.   VCUSA did not learn that any alterations had been made to the July 2016 ARA until Envy started to demand that VCUSA pay the transportation charges for shipping vehicles to Envy, purportedly pursuant to Sections 16(D)(i) and 16(F) of the ARA.  The standard terms of Sections 16(D)(i) and 16(F) provide exactly the opposite: i.e., as is custom and practice in the industry, all dealers are responsible for the cost of transporting vehicles to their dealerships.

40.   As a result of Envy's demands that VCUSA pay the transportation charges, VCUSA discovered that Envy had altered Sections 16(D)(i) and 16(F) of the July 2016 ARA.  VCUSA thereafter examined the document and found that Envy had surreptitiously made a number of other material alterations to the standard terms and conditions that had never been discussed with or agreed to by VCUSA.

41.   The alterations made by Envy included the following:

(a)   in the second sentence of Section 16(D)(i), the standard form of which provides that "Retailer will pay to the Company the applicable destination charges that the Company established for

10

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 11 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-15   Filed 10/26/18   Page 28 of 120   PageID.147
575

Retailer for Company Vehicles delivered to Retailer that are in effect at the time of shipment," Envy switched the positions of the words "Retailer" and "Company";

(b)   in the first sentence of Section 16(F), the standard form of which provides that "Retailer is responsible for, and will pay all charges, for demurrage, storage and other expenses accruing after shipment to Retailer," Envy inserted the word "not" before "responsible for" and substituted "is not required to" for "will";

(c)   in the second sentence of Section 16(F), the standard form of which provides that "[i]f diversions of shipments are made upon Retailer's request, or are made by the Company because of Retailer's failure or refusal to accept shipments of Retailer's orders, Retailer will pay all additional charges and expenses incident to such diversion," Envy changed the word "will" to "may";

(d)   in Section 10(A)(vii), the standard form of which provides that the Company may immediately terminate the ARA based on a "[w]illful misrepresentation by Retailer, or any of its agents or employees, in any claim or application for reimbursement by,

11

or payment from the Company," Envy deleted the words "or any of its agents or employees";

(e)     in Section 10(A)(xiii), the standard form of which provides that Company may immediately terminate the ARA based on a "[r]efusal or inability by Retailer to pay any amount Retailer owes to the Company within thirty (30) days after the Company demands payment from Retailer," Envy changed "thirty (30) days" to "ninety (90) days";

(f)     in Section 10(B)(iv), the standard form of which provides that the Company may terminate the ARA if the Retailer fails, within sixty (60) days of receiving written notice from Company, "to improve, alter, or modify its Retailer Facility to meet the requirements in the Company Facilities Guide or other Company Policies, or which Retailer had agreed or represented to the Company that Retailer would make or do," Envy deleted the word "improve" and inserted the words "subject to prior landlord approval and applicable state laws" at the end of the section;

(g)     in Section 10(B)(viii), the standard form of which provides that Company may terminate the ARA if the Retailer fails, within

12

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 13 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-17   Filed 10/26/18   Page 30 of 120   PageID.149
577

sixty (60) days of receiving written notice from Company, "to maintain an inventory of new Company Vehicles of the latest model in accordance with the objectives agreed to by Retailer and the Company," Envy substituted the word "unsold" for "new";

(h)    in Section 10(C), Envy deleted the second sentence, which provides that "[i]f Retailer refuses to enter into the applicable improvement plan, the Company may terminate this Agreement in accordance with Section 10A";

(i)    in Section 38, the standard form of which provides that Company will, within sixty (60) days of termination of the ARA, repurchase "[a]ll current model year demonstrator vehicles (as defined by the Company) and registered Volvo service loaners which are no more than one year old," Envy substituted the word "two" for the word "one";

(j)    in Section 4, the standard form of which provides that, prior to making any changes in the ownership or management of the Dealership, "Retailer agrees to obtain the Company's written approval, which shall not be unreasonably withheld," Envy substituted the words "may agree" for "agrees"; and

13

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 14 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-19   Filed 10/26/18   Page 31 of 120   PageID.150
578

(k)     in Section 9(B), the standard form of which requires that the

Company be notified within thirty (30) days that the Principal

Owner(s) or General Manager of the Retailer has died or

become incapacitated, Envy extended the deadline to sixty (60)

days.

42.     Upon information and belief, Envy made the foregoing surreptitious

changes in a fraudulent attempt to excuse its continuing and/or anticipated

breaches of the provisions which it altered.  Some of those breaches are described

below.

**E.      Envy's Breaches of Its Obligations**

43.     One of the principal topics of discussion during Envy's application

process in 2012 was the Jackson Volvo facility, which failed to comply with

VCNA's standards.  Envy informed VCNA that, rather than remain in the Jackson

Volvo facility on a long-term basis, Envy planned to build a new facility in

accordance with VCNA's standards.   Envy proposed to negotiate a short-term

extension of the lease on the Jackson Volvo facility and renovate, redesign and

refresh that facility while Envy searched for a long-term facility solution.

44.     In agreements executed in November 2012, Envy agreed, among other

things, that: (a) the current facility did not meet VCNA's requirements and,

accordingly, Envy would make specified improvements to the facility by October

14

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 15 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-19   Filed 10/26/18   Page 32 of 120   PageID.151
579

31, 2013; (b) Envy would develop and secure a plan for an all-new facility acceptable to VCNA by October 31, 2016, and would be operating in the all-new facility by May 1, 2018; (c) Envy would use both the current and planned future locations exclusively for Volvo operations; (d) Envy would maintain a $3 million floor plan for the purchase of new Volvo vehicles; and (e) Envy would meet agreed levels of sales performance and customer satisfaction for sales and service.

45.     Since becoming an authorized Volvo dealer in December 2012, Envy has failed to honor the foregoing commitments.

46.     Envy has (a) failed to make the promised improvements to the current facility and (b) been unable to pursue an acceptable long-term, all-new facility solution.

47.     In addition, Envy has failed to address certain serious deficiencies in the current facility, such as the repair of broken car lifts and the installation of new lifts in its service department and the upgrade of its bathroom despite promises to VCNA and VCUSA that it would promptly address these deficiencies.

48.     Envy has also repeatedly breached its agreement to use the existing facility solely for its Volvo operations.

49.     In June 2014, VCNA discovered, through the dealership's own website and Facebook site, that Compagna T-Rex motorcycles and three-wheel bikes were being showcased in the Volvo showroom.  When VCNA notified Envy

15

that this was a breach of its obligations, Envy promised that the motorcycles and the bikes would be removed and that such a breach would not occur again.

50. Notwithstanding Envy's promise, when VCNA's Marketing Manager visited the dealership on September 17, 2014, he discovered two motorcycles being displayed on the showroom floor. The Marketing Manager advised Envy once again that the display was a breach of the Dealership's obligations, and Envy once again promised that it would use the facility exclusively for its Volvo operations.

51. In November 2016, however, VCUSA learned that the dealership was operating a car rental company called Envy Rent out of the dealership facilities in violation of its exclusivity obligation.

52. Envy also failed to maintain the agreed-upon floor plan financing it needed to acquire and stock an adequate inventory of new Volvo vehicles for resale.

53. On or about August 13, 2014, Bank of America, Envy's floor plan lender, placed the dealership on "finance hold," meaning that the bank would not advance funds for Envy's purchase of any additional Volvo vehicles.

54. Envy remained on finance hold until on or about December 17, 2014, when the dealership obtained an inadequate temporary flooring line of $1 million.

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 17 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-13   Filed 10/26/18   Page 34 of 120   PageID.153
581

55.     Envy did not obtain a flooring line in an adequate amount until on or about February 5, 2015, when it obtained a new flooring line with the Bank of Hawaii.

56.     On January 27, 2016, however, the Bank of Hawaii notified VCUSA that it was temporarily suspending the dealership's flooring line.   The Bank consequently rejected VCUSA's requests for payment for several vehicles that VCUSA had shipped to the dealership.

57.     In April 2016, the Bank of Hawaii rejected VCUSA's request for payment of $60,000 for a new Volvo XC90 vehicle that VCUSA had shipped to the dealership.  Envy thereafter refused to write a check to VCUSA for the XC90 on the ground that $60,000 was a "big amount" for the dealership.

58.     On or about April 15, 2016, Envy notified VCUSA that it had switched its floor plan from the Bank of Hawaii to NextGear Capital, Inc. ("NextGear").  Envy continued, however, to maintain a Bank of Hawaii account from which VCUSA was to be paid any amount that Envy owed VCUSA on its parts account at the end of each month.

59.     In September 2016, Fedotov complained to VCUSA that the dealership's account with the Bank of Hawaii was overdrawn by $56,000 because its monthly parts account statement with VCUSA showed a debit of $56,000. Fedotov demanded that VCUSA write an apology letter for Envy to show to the

Bank.   VCUSA informed Fedotov that the account statement was correct and refused to issue the requested apology.

60.   In October 2016, the Bank of Hawaii rejected VCUSA's request for payment of a $140 debit in Envy's parts account on the ground of "insufficient funds."

61.   By letter dated April 18, 2017, NextGear notified VCUSA that it was suspending Envy's floor plan effective as of April 20, 2017.

62.   By letter dated April 26, 2017, Envy represented to VCUSA that it was "taking action intended to result in the restoration of its flooring line of credit within the next 60 days," and, by email dated May 18, 2017, Envy represented to VCUSA that, "based on developments since [its] April 26, 2017 letter to [VCUSA, Envy] anticipates that it will have an adequate flooring line of credit in place on or before June 12, 2017."

63.   Despite these representations, Envy did not have any (much less an adequate) flooring line of credit in place on or before June 12, 2017 and continued to lack any floor plan financing until at least June 20, 2017.

64.   As a result of the suspension of its floor plan and its failure to promptly put a new, adequate flooring line of credit in place, Envy was unable to pay for and take delivery of new Volvo vehicles from April 20, 2017 through at least June 20, 2017, in material breach of its obligations under the ARA.

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 19 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-13   Filed 10/26/18   Page 36 of 120   PageID.155
583

65.     On or about June 7, 2017, Bank of Hawaii rejected VCUSA's request

for payment of $72,031.67, which Envy owed VCUSA on its parts account for the

month of May 2017.

66.     As of October 27, 2017, Envy has not paid VCUSA a total of

$149,020.37 due and owing to VCUSA for goods and services, despite VCUSA's

demands for payment.

67.     Upon information and belief, Envy made the surreptitious alterations

to the July 2016 ARA in an attempt to (a) excuse its continuing failures to improve

its facility, to maintain an adequate flooring line and consequently an adequate

inventory of new Volvo vehicles, and to timely pay charges for which it is

responsible, and (b) avoid termination for the foregoing breaches and/or

misrepresentations made by its "agents or employees."

**F.     Violations of Obligations to Customers**

68.     In section 36 of the ARA, Envy agreed to provide VCUSA with

prompt notice of all Volvo customer complaints and "to do nothing to affect

adversely the Company's rights" under consumer protection laws and regulations.

In Section 37 of the ARA, Envy agreed to treat Volvo customers "with the utmost

respect and honesty," and not to "engage in any unfair, deceptive, misleading,

unethical, fraudulent or otherwise prohibited practice."  In Section 34 of the ARA,

Envy agreed to indemnify and to hold VCUSA harmless from any and all liability,

19

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 20 of 49   PageID #:
584
Case 1:18-cv-00415-DKW-RT   Document 1-13   Filed 10/26/18   Page 37 of 120   PageID.156

loss, cost or expense, including reasonable attorneys' fees, court costs and costs of

litigation, resulting from, among other things, "Retailer's unfair, misleading,

deceptive or fraudulent trade practices."

69. On information and belief, Envy has engaged in a pattern and practice

of unfair, misleading, deceptive or fraudulent trade practices.

70. Envy's conduct has included failure to honor its obligation to pay

amounts it is obligated to pay on behalf of Volvo customers relating to "trade-ins"

and to the purchase of extended warranties and/or service contracts.

71. When a customer trades in a used vehicle as part of the transaction in

which the customer purchases or leases a vehicle from a motor vehicle dealer, the

dealer undertakes the obligation to pay off any amount the customer owes on any

loan pertaining to the used vehicle. The dealer has the obligation to pay off the

customer's loan promptly, before the customer is obligated to make any additional

monthly loan payments and before the customer can be held in default on the loan

and/or be subject to penalties, interest, and loss of credit standing.

72. Notwithstanding this obligation, Envy has deliberately failed to pay

off customer loans unless and until the customer has threatened to take action

against Envy.

73. For example, on August 5, 2017, a customer named Michael Childress

traded in a used Range Rover to Envy when he purchased a new Volvo XC90 from

20

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 21 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-15   Filed 10/26/18   Page 38 of 120   PageID.157
585

Envy.  Envy failed to pay off Mr. Childress's loan on the traded-in vehicle until on or about October 24, 2017, almost three months after the trade-in.  Envy did not pay off the loan until after the customer complained to VCUSA that the loan had not been paid off, that the loan was now in collection, that the default was ruining his credit, and that Envy would not even answer or return his phone calls.  Envy paid off the loan only after VCUSA notified Envy that it was in breach of Sections 36 and 37 of the ARA and subject to termination for these breaches.

74.   On November 22, 2017, VCUSA received a complaint from customers Eugene and Clardean Lehano that Envy had failed to pay off the $8,900 loan balance on a vehicle that they traded in to Envy on June 24, 2017, and as a result they were still making payments on the loan.  Mr. and Mrs. Lehano further complained that Envy had failed to change the trade-in's registration and that as a result (i) they had received two parking tickets for a vehicle they no longer owned or operated and (ii) they had been visited by the police because the trade-in vehicle had been involved in a crime.  Mr. and Mrs. Lehano also complained that Envy had failed to respond to their complaints despite calls and visits to the dealership. On November 24, 2017, VCUSA relayed this complaint to Envy, pointing out that the complaint was "very, very serious" and asking Envy to explain the situation and advise what steps Envy would take to correct it.  Envy failed to respond to VCUSA's request.

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 22 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-13   Filed 10/26/18   Page 39 of 120   PageID.158
586

75.   In January 2018, a customer named Jacob Michaels complained to VCUSA concerning a lease transaction with Envy pursuant to which Mr. Michaels traded in a Ford F150 with a loan balance of approximately $28,000.  Envy agreed to and was obligated to pay off the loan balance, but Mr. Michaels complained that Envy had failed to do so.  By letter dated March 9, 2018 from VCUSA's counsel to Envy's counsel, VCUSA notified Envy of its failure to satisfy its obligation to pay off Mr. Michaels' loan and inquired whether Envy intended to fulfill its obligations.  Envy failed to respond to VCUSA's letter.

76.   In addition, Envy has failed to provide customers who have purchased or leased vehicles from Envy with the necessary paperwork the customers need to register the vehicles.

77.   On November 10, 2017, VCUSA received a complaint from customer Lindsey Dymond that Envy had failed to provide him with the title and registration to a vehicle that he purchased in May 2017, that Envy had been "dodging [his] calls," and that when he visited the dealership he had to "force [his] way into the manager's office."

78.   Subsequently, at least three additional customers complained to VCUSA that Envy had failed to provide them with needed registration materials: Yoko Nagashima; Stephen Holder; and Sherman Wilson.  By letter dated March 9, 2008 from VCUSA's counsel to Envy's counsel, VCUSA informed Envy of its

22

failure to satisfy its obligations to these three customers and inquired whether Envy intended to do so.  Envy failed to respond to VCUSA's letter.

79.    On information and belief, Envy has also failed to turn over money to vendors that customers have paid to Envy to purchase services such as extended warranties or service contract.

80.    When selling a vehicle to a customer, a dealer may also sell an extended warranty or service contract that is offered by a third-party vendor.  If the customer agrees to purchase and pays the dealer for the extended warranty or service contract, the dealer has an obligation to turn over to the third-party vendor the amount necessary to procure the coverage contracted by the customer.  If the dealer fails to do so, then when the customer attempts to obtain repairs pursuant to the extended warranty or service contract – sometimes years after the purchase of the vehicle – the customer will learn that it has no coverage for the repairs.

81.    Envy has taken funds from customers and failed to procure the contracted-for coverage from the third party vendors.  For example, in July 2017, a customer brought a Volvo that he had purchased from Envy in 2014 in for repairs at a Volvo dealership in Portland, Oregon.  At the time of purchasing the vehicle, the customer had paid Envy for an extended service contract offered by Volvo Car Financial Services ("VCFS").  Envy, however, had never turned the payment over

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 24 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-13   Filed 10/26/18   Page 41 of 120   PageID.160
588

to VCFS to procure the contract for the customer.  On information and belief, this was and is a routine practice at Envy.

82.     Envy's unfair, misleading, deceptive, or fraudulent trade practices have caused and continue to cause harm to VCUSA's business and reputation in Hawaii, and threaten to expose VCUSA to liability to customers under consumer protection laws, from which Envy is obligated to hold VCUSA harmless and to indemnify VCUSA from all loss, cost, or expense, including, without limitation reasonable attorney's fees, court costs and costs of litigation.

**G.     Unlawful Surreptitious Recording**

83.     Envy is part of VCUSA's Western Region, which has its headquarters in Irvine, California.

84.     Because Envy is located in Hawaii, it often communicates with the Western Region for business purposes by telephone.

85.     Envy used an electronic recording device to secretly record at least seven (7) confidential telephone conversations between Fedotov and/or John Martinho, Envy's Chief Operating Officer, and representatives of the Western Region located in California.  VCUSA first learned of these recordings when Envy produced them in discovery on October 17, 2017.

86.   The recordings were of conversations that were personal to the parties, relating to Envy's business plans and operations.   Certain of those conversations were placed or received on cellular phones.

87.   Each of these recordings was made without the VCUSA representative's knowledge or consent.

88.   In addition, on February 20 and 21, 2017, Martinho surreptitiously recorded the confidential proceedings at a Volvo Retailer Conference (the "Conference") in Yountville, California, which he attended as a representative of Envy.

89.   One of VCUSA's major purposes in convening the Conference was to share confidential business plans and marketing information with Volvo retailers, including the display of new Volvo models which have not yet been publicly announced.

90.   Because of the confidential nature of the information shared with Volvo retailers at the Conference, participants were not permitted to bring in cell phones or any other devices with which they could record the proceedings. To enforce this prohibition, VCUSA required participants to go through airport-style metal detectors before entering the Conference.

91.   In violation of this prohibition, and unknown to VCUSA, Martinho brought a pen containing a concealed recording device into the Conference.

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 26 of 49     PageID #:
590
Case 1:18-cv-00415-DKW-RT   Document 1-13   Filed 10/26/18   Page 43 of 120   PageID.162

92.     During a confidential presentation on Tuesday, February 21, 2017, the second day of the Conference, the security staff at the Conference noticed Martinho acting strangely, including continually grabbing at his pocket pen and moving it in a twisting motion.

93.     After the presentation, security staff approached Martinho and asked to see the pen.   Martinho initially denied having a pen.   After security staff specified the location of the pen (i.e., in the inside pocket of Martinho's suit), Martinho turned over the pen.

94.     The pen had a camera with a 64-gigabyte SD memory card. Martinho admitted that he was using the device to record the Conference, although he denied having photographed the vehicles.

95.     Martinho was excluded from the remainder of the Conference.

96.     By letter from VCUSA's counsel to Envy's California counsel on February 22, 2017, VCUSA demanded that Envy turn over to VCUSA any recordings, including notes, Martinho had made of the Conference.

97.     Envy did not respond to VCUSA's demand.

**H.     Envy's Termination and Subsequent Cybersquatting**

98.     As a result of Envy's repeated violations of the rights of Volvo customers and related breaches of its obligations under the ARA, VCUSA issued a notice of termination to Envy dated December 1, 2017.   The notice cited Envy's

failure to pay off customer loans on trade-ins and its failure to provide customer Lindsey Dymond with his vehicle title and registration. The notice stated that the ARA would terminate on the sixteenth (16th) day after the date on which Envy received the notice.

99. Rather than promptly contest the basis of the notice of termination and seek a stay of the termination, Envy closed its doors on or about December 12, 2017.

100. Shortly thereafter, VCUSA decided to appoint the Cutter automotive group as the new Volvo dealer in Hawaii.

101. On or about December 29, 2017, an Envy employee unlawfully acquired the rights to the URL and domain name cuttervolvocars.com. The organization for which the Envy employee registered the domain name was "Envy Rent," which Envy has represented, in responding to discovery requests in this case, is a trade or "doing business as" name for Envy itself. In addition, the domain name was registered using an email address belonging to Fedotov (mike@envyAG.com) and the phone number of Envy Hawaii LLC d/b/a Volvo Cars of Honolulu.

102. Upon information and belief, Envy's acquisition of the cuttervolvocars.com domain name was done in a bad faith attempt to profit by acquiring a URL with the trade name of the new Hawaii Volvo retailer that

VCUSA was about to appoint, and/or to maliciously retaliate against VCUSA by interfering with any attempt by Volvo's new authorized dealer in Hawaii to use its trade name to market its goods and services on the internet.

103.   Section 10.F of the ARA provides that "[u]pon termination, Retailer agrees to discontinue the use of any trademarks and trade names in accordance with the terms set out in Attachment 1." Attachment 1 to the ARA is entitled "Trademark Sub-License and License Agreement" (the "License Agreement"). The License Agreement regulates Envy's use of certain Volvo trademarks (referred to in the agreement as the "Volvo Trademarks and VCC Trademarks"), including VOLVO and the VOLVO logo.

104.   Section 10.1 of the License Agreement provides that Envy's license "shall unconditionally terminate automatically, without need for a prior termination or court intervention, on the date of expiration or termination of the [ARA] (irrespective of the reasons therefor)."   Section 11 further provides that upon such a termination, "the Retailer shall . . . forthwith cease use of the Volvo Trademarks and VCC Trademarks and shall consent to cancellation of any entry of the Retailer as a sub-licensee of the Volvo Trademarks and licensee of the VCC Trademarks and shall execute any document necessary for that purpose."

105.   By letter dated February 2, 2018, from VCUSA's counsel to Envy's counsel,   VCUSA   demanded   that   Envy   immediately   surrender   the

28

cuttervolvocars.com URL to VCUSA.  In a responsive letter from its counsel dated February 8, 2018, Envy claimed the URL had been acquired by an Envy employee whose whereabouts "are presently unknown" and that Envy had "no obligation" to cause the surrender of the URL.  In a responsive letter from its counsel dated February 16, 2018, VCUSA pointed out that Envy is responsible for the acts of Envy's employee, undertaken in Envy's trade name, using Envy's telephone number and the email address of Envy's sole owner as the contact information for the owner of the URL, and VCUSA accordingly repeated its demand that Envy surrender the URL.  Envy has not responded to VCUSA's February 16, 2018 letter, and has failed to surrender the URL.

106.   Envy's acquisition of, and failure to surrender, the URL is a violation of VCUSA's trademark rights and of Envy's obligations under the ARA and the License Agreement.  VCUSA has been injured by Envy's misappropriation of its Volvo mark and Envy's interference with its authorized dealer's use of its trade name to market Volvo goods and services in Hawaii.

**I.**   <u>**Unjust Enrichment of Envy**</u>

107.  VCUSA has a "Margin and Bonus Program" pursuant to which, among other things, it pays bonuses to its dealers to assist them in retailing Volvo products.  Among other bonuses available under the program, VCUSA pays the

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 30 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-13   Filed 10/26/18   Page 47 of 120   PageID.166
594

dealer a bonus calculated as a percentage of the Manufacturer Suggested Retail Price ("MSRP") of each vehicle VCUSA wholesales to the dealer.

108.   Long before VCUSA issued the notice of termination to Envy, Envy had defaulted on its obligation to repay millions of dollars to its floorplan lender, NextGear Capital ("NGC").   Envy's vehicle inventory served as security for Envy's borrowings from NGC.  Upon information and belief, NGC had agreed to forbear on seizing the vehicles in the hope that Envy would sell its Volvo dealership and use the proceeds to repay NGC.

109.   At or about the time that Envy closed its doors in December 2017, NGC took possession of Envy's new Volvo vehicle inventory pursuant to its rights as a secured lender.

110.   VCUSA purchased from NGC 29 new, unsold Volvo vehicles which it had previously wholesaled to Envy and on which it had previously made bonus payments to Envy in the aggregate amount of $73,904.10.

111.   VCUSA thereafter re-wholesaled the 29 new, unsold Volvo vehicles to Cutter Volvo and, pursuant to the Margin and Bonus Program, paid Cutter Volvo an aggregate bonus for the vehicles of $73,904.10.

112.   Because Envy did not use the bonus money for the purpose it was intended – i.e., to assist in retailing the vehicles – and because VCUSA had to re-wholesale the vehicles to another Volvo dealer and provide the bonus money to

30

that dealer, Envy was unjustly enriched in the amount of $73,904.10 and VCUSA suffered damages in that amount.

### FIRST COUNTERCLAIM (Against Envy and Fedotov)

113.    VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through 112 of these Counterclaims as if fully set forth herein.

114.    In applying for approval of Envy's acquisition of the assets of Jackson Volvo in 2012, Envy and Fedotov materially misrepresented Fedotov's financial condition by failing to disclose that Fedotov had borrowed hundreds of thousands of dollars.

115.    Envy and Fedotov misrepresented Fedotov's financial condition for the purpose of inducing VCNA to approve Envy's acquisition of the Jackson Volvo assets and to appoint Envy as a Volvo dealer.

116.    VCNA justifiably relied on Counterclaim Defendants' representations concerning Fedotov's financial condition in approving Envy's acquisition of the Jackson Volvo assets and in appointing Envy as a Volvo dealer.

117.    VCUSA has suffered substantial damages as a result of Counterclaim Defendants' fraud, as it has been saddled with a dealer that is financially unstable, has been unable to maintain adequate floor plan financing for the acquisition of Volvo vehicle inventory, has committed numerous breaches of its contractual obligations as set forth in paragraphs 43-66 of these Counterclaims, has engaged in

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 32 of 49    PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-16   Filed 10/26/18   Page 49 of 120  PageID.168
590

fraudulent, unethical, and/or criminal conduct as set forth in paragraphs 15, 23-42, and 68-112 of these Counterclaims, and has suffered a significant decline in sales and service performance since Fedotov acquired sole ownership.

118.   By reason of the foregoing, VCUSA is entitled to recover damages resulting from Counterclaim Defendants' fraud.

119.   By reason of the foregoing, VCUSA is also entitled to an award of punitive damages against Counterclaim Defendants in an amount to be determined at trial.

### SECOND COUNTERCLAIM (Against Envy and Fedotov)

120.   VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through 119 of these Counterclaims as if fully set forth herein.

121.   In applying for approval of the transfer of sole ownership of Envy to Fedotov in 2014, Envy and Fedotov materially misrepresented Fedotov's financial condition by falsely representing that his total liabilities were $600,000 and that the other owners of Envy had agreed to transfer their ownership interests to Fedotov for a total of $600,000, when in fact Fedotov had liabilities of over $3 million and had agreed to pay the other owners of Envy over $3 million for their ownership shares.

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 33 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-137   Filed 10/26/18   Page 50 of 120   PageID.169
597

122.   Envy and Fedotov misrepresented Fedotov's financial condition for the purpose of inducing VCNA to approve the transfer of sole ownership of Envy to Fedotov.

123.   VCNA justifiably relied on Counterclaim Defendants' representations concerning Fedotov's financial condition in approving the transfer of sole ownership of Envy to Fedotov.

124.   VCUSA has suffered substantial damages as a result of Counterclaim Defendants' fraud, as it has been saddled with a dealer that is financially unstable, has been unable to maintain adequate floorplan financing for the acquisition of Volvo vehicle inventory, has committed numerous breaches of its contractual obligations as set forth in paragraphs 43-66 of these Counterclaims, has engaged in fraudulent, unethical and/or criminal conduct as set forth in paragraphs 15, 23-42, and 68-112 of these Counterclaims, and has suffered a significant decline in sales and service performance since Fedotov acquired sole ownership.

125.   By reason of the foregoing, VCUSA is entitled to recover damages resulting from Counterclaim Defendants' fraud.

126.   By reason of the foregoing, Plaintiff is also entitled to an award of punitive damages against Counterclaim Defendants in an amount to be determined at trial.

## THIRD COUNTERCLAIM (Against Envy)

127.   VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through 126 of these Counterclaims as if fully set forth herein.

128.   Envy fraudulently altered certain standard provisions of the July 2016 ARA, including the alterations listed in paragraph 41 above.

129.   Envy had a duty to disclose to VCUSA the fact that it had made the alterations because Envy knew that VCUSA was about to countersign the July 2016 ARA under a mistake of fact, i.e., the reasonable belief that Envy had signed the July 2016 ARA in the same form in which VCUSA had sent it to the Envy.

130.   Envy also had a duty to disclose to VCUSA the fact that it made the alterations because, under the customs of trade and the other objective circumstances, VCUSA would reasonably expect a disclosure of that fact.

131.   Envy failed to disclose to VCUSA the fact that it made the alterations.

132.   VCUSA signed the July 2016 ARA without reading the provisions that Envy had surreptitiously altered in the mistaken but reasonable belief that the document was in the same form in which VCUSA had sent it to the Envy for signature.

133.   By reason of the foregoing, VCUSA requests (a) rescission of the altered provisions and reformation of the July 2016 ARA to conform the altered provisions to the standard provisions of the ARA; and/or (b) a declaratory

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 35 of 49   PageID #:
599
Case 1:18-cv-00415-DKW-RT   Document 1-13   Filed 10/26/18   Page 52 of 120   PageID.171

judgment that VCUSA is not bound by any of the provisions of the July 2016 ARA that Envy altered.

### FOURTH COUNTERCLAIM (Against Envy and Fedotov)

134.   VCUSA repeats and realleges each and every one of its allegations in paragraphs 1 through 133 of these Counterclaims as if fully set forth herein.

135.   Counterclaim Defendants' failure to disclose to VCUSA the fact that material alterations had been made to the July 2016 ARA was done with the intent to induce, and did induce, VCUSA to countersign the document.

136.   In countersigning the document, VCUSA justifiably relied on Counterclaim Defendants' failure to disclose that material alterations had been made to its terms and conditions.

137.   VCUSA has suffered damages as a result of Counterclaim Defendants' fraud.

138.   By reason of the foregoing, VCUSA is entitled to an award of damages against Counterclaim Defendants in an amount to be determined at trial.

139.   By reason of the foregoing, VCUSA is also entitled to an award of punitive damages against Counterclaim Defendants in an amount to be determined at trial.

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 36 of 49   PageID #:
600
Case 1:18-cv-00415-DKW-RT   Document 1-12   Filed 10/26/18   Page 53 of 120   PageID.172

## FIFTH COUNTERCLAIM (Against Envy)

140.   VCUSA repeats and realleges each and every one of its allegations in paragraphs 1 through 139 of these Counterclaims as if fully set forth herein.

141.   Section 17 of the ARA requires Envy to pay for Volvo Products purchased by Envy "in cash in advance or by other payment methods [VCUSA] approves in writing," and requires Envy to "pay all collection costs, including but not limited to, reasonable attorneys' fees, costs and expenses of litigation."

142.   Envy has breached the July 2016 ARA by failing to timely pay VCUSA $213,538.08 due and owing to VCUSA on Envy's parts account through the present.

143.   Alternatively and additionally, Envy is liable to VCUSA in the amount of $213,538.08 for goods and/or services purchased by Envy from VCUSA but not timely paid for by Envy.

144.   By reason of the foregoing, Envy is liable to VCUSA in the amount of $213,538.08, plus VCUSA's collection costs, including but not limited to reasonable attorneys' fees and costs and expenses of litigation.

## SIXTH COUNTERCLAIM (Against Envy)

145.   VCUSA repeats and realleges each and every one of its allegations in paragraphs 1 through 144 of these Counterclaims as if fully set forth herein.

146. The relationship between VCUSA and Envy is governed by the standard provisions of the ARA.

147. Section 37 of the ARA provides that "Company and Retailer each recognize the importance of dealing with each other in an open and honest manner."

148. Section 37 of the ARA further provides that "Retailer will not engage in any unfair, deceptive, misleading, unethical, fraudulent or otherwise prohibited practice."

149. The ARA also contains an implied covenant of good faith and fair dealing.

150. Envy breached its obligations under Section 37, as well as its implied covenant of good faith and fair dealing, by surreptitiously altering certain of the standard provisions of the July 2016 ARA and failing to disclose to VCUSA the fact that it made such alterations.

151. By reason of the foregoing, VCUSA has suffered damages in an amount to be determined at trial.

152. By reason of the foregoing, VCUSA is also entitled to recover its reasonable attorney's fees and litigation expenses incurred in this action.

## SEVENTH COUNTERCLAIM (Against Envy)

153.   VCUSA repeats and realleges each and every one of its allegations in paragraphs 1 through 152 of these Counterclaims as if fully set forth herein.

154.   VCUSA brings this claim under 18 U.S.C. § 2520(a), which grants a private right of action to any person whose oral communication is intercepted in violation of Chapter 119 of Part I of Title 18, which includes 18 U.S.C. § 2511.

155.   Under 18 U.S.C. § 2511(1)(b)(iv)(B), any person who "intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when… such use or endeavor to use… obtains or is for the purpose of obtaining information relating to the operations of any business… the operations of which affect interstate or foreign commerce," has committed a violation of Chapter 119.

156.   VCUSA is a business the operations of which affect interstate or foreign commerce.

157.   Martinho's use of, or endeavor to use, the pen for the purpose of obtaining confidential information at the Conference was a violation of 18 U.S.C. § 2511(1)(b)(iv)(B).

158.   Martinho attended the Conference as an agent of Envy.

159.   In addition, upon information and belief, Envy procured Martinho's use or endeavor to use the recording device concealed in the pen to obtain confidential information relating to VCUSA's operations.

160.   By reason of the foregoing, VCUSA seeks an award of $10,000 in statutory damages under 18 U.S.C. § 2520(c)(2), an injunction prohibiting Envy from any future violations of § 2511, and an order requiring Envy to turn over any other recordings it has made in violation of § 2511, along with reasonable attorney's fees and other litigation costs reasonably incurred.

## EIGHTH COUNTERCLAIM (Against Envy)

161.   VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through 160 of these Counterclaims as if fully set forth herein.

162.   This claim is brought under California Penal Code § 637.2, which grants a private right of action to any person who has been injured by a violation of Chapter 1.5 of Title 15 of Part 1 of the Penal Code, which includes §§ 632 and 632.7.

163.   California Penal Code § 632 provides in pertinent part: "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic… recording device to… record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device,

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 40 of 49   PageID #:
604
Case 1:18-cv-00415-DKW-RT   Document 1-10   Filed 10/26/18   Page 57 of 120   PageID.176

except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation, or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment."

164. California Penal Code § 632.7 provides in pertinent part: "Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment."

165. Envy violated California Penal Code §§ 632 and 632.7 by using an electronic recording device to secretly record at least seven (7) telephone conversations with VCUSA representatives located in California.

166. In addition, Envy violated California Penal Code § 632 when Martinho used or endeavored to use the pen to record the confidential proceedings at the Conference in Yountville, California.

167. By reason of the foregoing, VCUSA seeks recovery of not less than $5,000 in statutory damages, per violation, or three times the amount of VCUSA's

40

actual damages, whichever is greater; an injunction preventing Envy from any further violations of Chapter 1.5; and an order requiring Envy to turn over to VCUSA any and all recordings made of telephone conversations with VCUSA representatives, or at the Conference.

## NINTH COUNTERCLAIM (Against Envy)

168.   VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through 167 of these Counterclaims as if fully set forth herein.

169.   Envy has breached Sections 36 and 37 of the ARA by failing to promptly pay off customer loans and by failing to procure extended warranties and/or other service contracts contracted and paid for by customers.

170.   By reason of the foregoing, Envy is liable to VCUSA in damages for harm to VCUSA's reputation and loss of business resulting from Envy's unfair, misleading, deceptive, or fraudulent trade practices.

171.   By reason of the foregoing, VCUSA is also entitled to a declaratory judgment that Envy is obligated to hold VCUSA harmless and to indemnify VCUSA from all loss, cost, or expense, including without limitation reasonable attorneys' fees, court costs and costs of litigation, resulting from Envy's unfair, misleading, deceptive, or fraudulent trade practices.

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 42 of 49   PageID #:
600
Case 1:18-cv-00415-DKW-RT   Document 1-10   Filed 10/26/18   Page 59 of 120   PageID.178

## TENTH COUNTERCLAIM (Against Envy)

172.   VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through 171 of these Counterclaims as if fully set forth herein.

173.   Envy registered the domain name cuttervolvocars.com with a bad faith intent to profit from a domain name that incorporates the Volvo mark, which was distinctive at the time of registration of the domain name, and was famous at the time of registration of the domain name.

174.   Envy's bad faith is demonstrated by (among other things) the following:   at the time of registering the domain name, Envy was aware that VCUSA intended to appoint Cutter Volvo as an authorized Volvo dealer in Hawaii following the closure of Envy's Volvo dealership; Envy has no trademark or intellectual property rights in the cuttervolvocars.com domain name; the domain name does not consist of the legal name of Envy or any name that is commonly used to identify Envy; Envy has never used the domain name in connection with the bona fide offering of any goods or services; Envy has not made and cannot make bona fide noncommercial or fair use of the Volvo mark in a site accessible under the domain name; Envy acted with the evident intent to divert consumers from the websites of Cutter Volvo and VCUSA; and Envy's continued use of any Volvo mark is a violation of its obligations under the ARA and the License Agreement.

175. By reason of the foregoing, Envy has violated 15 U.S.C. § 1125(d)(1)(A), the ARA and the License Agreement.

176. By reason of the foregoing, VCUSA requests (a) an award of either actual damages or statutory damages in the amount of $100,000 pursuant to 15 U.S.C. § 1117(d), to be elected by VCUSA before final judgment, (b) an award of attorney's fees pursuant to 15 U.S.C. § 1117(a), on the ground that this is an "exceptional" case because, among other things, Envy maliciously registered the cuttervolvocars.com domain name to retaliate against VCUSA, and (c) an order requiring forfeiture and/or cancellation of the domain name, and the transfer of the domain name to VCUSA or its designee, pursuant to 15 U.S.C. § 1125 (d) (1) (C).

**ELEVENTH COUNTERCLAIM (Against Envy)**

177. VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through 176 of these Counterclaims as if fully set forth herein.

178. Envy received bonuses from VCUSA in the amount of $73,904.10 upon its wholesale purchase of 29 new Volvo vehicles.

179. The purpose of the bonus was to assist Envy in retailing the vehicles.

180. Envy failed to retail the vehicles.

181. Following the closure of Envy's Volvo dealership, VCUSA repurchased the 29 vehicles from Envy's floor plan lender and re-wholesaled the vehicles to Cutter Volvo.

43

182. Upon wholesaling the vehicles to Cutter Volvo, VCUSA was obligated under its Margin and Bonus Program to provide the $73,904.10 in bonuses to Cutter Volvo.

183. By reason of the foregoing, Envy has been unjustly enriched in the amount of $73,904.10, and VCUSA has been damaged in that same amount.

184. By reason of the foregoing, VCUSA is entitled to recover the $73,904.10 from Envy as unjust enrichment and/or money had and received.

**WHEREFORE**, VCUSA demands judgment as follows:

(i)     on the First Counterclaim, an award of damages and punitive damages in amounts to be determined at trial;

(ii)    on the Second Counterclaim, an award of damages and punitive damages in amounts to be determined at trial;

(iii)   on the Third Counterclaim, (a) rescission of the altered provisions and reformation of the July 2016 ARA to conform to the standard provisions of the ARA; and (b) a declaratory judgment that VCUSA is not bound by any of the provisions of the July 2016 ARA that Envy altered;

(iv)    on the Fourth Counterclaim, an award of damages and an award of punitive damages in amounts to be determined at trial;

Case 1:17-cv-00040-HG-KSC   Document 67-3   Filed 04/06/18   Page 45 of 49   PageID #:
Case 1:18-cv-00415-DKW-RT   Document 1-10   Filed 10/26/18   Page 62 of 120   PageID.181
609

(v)     On the Fifth Counterclaim, an award of $213,538.08 plus VCUSA's collection costs, including reasonable attorney's fees and the costs and expenses of litigation;

(vi)    on the Sixth Counterclaim, an award of damages in an amount to be determined at trial, and an award of reasonable attorney's fees and litigation expenses in amount to be determined by the Court;

(vii)   on the Seventh Counterclaim, (a) an award of an award of $10,000 in statutory damages under 18 U.S.C. § 2520(c)(2), (b) an injunction prohibiting Envy from any future violations of § 2511, (c) an order requiring Envy to turn over any other recordings it has made in violation of § 2511, and (d) an award of reasonable attorney's fees and litigation expenses in an amount to be determined by the Court;

(viii)  on the Eighth Counterclaim, (a) an award of not less than $5,000 in statutory damages, per violation, or three times the amount of VCUSA's actual damages, whichever is greater, (b) an injunction preventing Envy from any further violations of Chapter 1.5, and (c) an order requiring Envy to turn over to VCUSA any and all recordings made of telephone conversations with VCUSA representatives, or at the Conference;

45

(ix)   on the Ninth Counterclaim, (a) an award of damages in an amount to be determined at trial; and (b) a declaratory judgment that that Envy is obligated to hold VCUSA harmless and to indemnify VCUSA from all loss, cost, or expense, including without limitation reasonable attorneys' fees, court costs and costs of litigation, resulting from Envy's unfair, misleading, deceptive, or fraudulent trade practices;

(x)   on the Tenth Counterclaim, (a) an award of either actual damages or statutory damages in the amount of $100,000, to be elected by VCUSA before final judgment, (b) an award of attorney's fees, and (c) an order requiring forfeiture and/or cancellation of the cuttervolvocars.com domain name, and the transfer of the domain name to VCUSA or its designee;

(xi)   on the Eleventh Counterclaim, an award of damages and/or restitution in the amount of $73,904.10; and

any related preliminary and/or permanent injunctive relief, interest, costs, and such other and further relief as the Court deems just and proper.

Dated:  Honolulu, Hawaii, _____, 2018.

/s/ _____
MARK J. BENNETT
ANDREW J. LAUTENBACH
Attorneys for Defendant
VOLVO CAR USA LLC

46

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br><br>          Plaintiff,<br><br>   vs.<br><br>VOLVO CAR USA LLC,<br><br>          Defendant. | CIVIL NO.  17-00040 HG/KSC<br><br>**JURY DEMAND** |
| VOLVO CAR USA LLC,<br><br>          Counterclaim Plaintiff,<br>   vs.<br><br>ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br>          Counterclaim Defendant,<br>and<br><br>MIKHAIL FEDOTOV,<br><br>          Additional Counterclaim Defendant. | |

**JURY DEMAND**

Counterclaim Plaintiff Volvo Car USA LLC hereby demands a trial by jury

on all issues so triable.

Dated:  Honolulu, Hawaii, _____, 2018.


               /s/_____      _____

               MARK J. BENNETT
               ANDREW J. LAUTENBACH
               Attorneys for Defendant
               VOLVO CAR USA LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ENVY HAWAII LLC dba VOLVO CARS HONOLULU, <br><br> Plaintiff, <br><br> vs. <br><br> VOLVO CAR USA LLC, <br><br> Defendant. | CIVIL NO.  17-00040 HG/KSC <br><br> **CERTIFICATE OF SERVICE** |
| VOLVO CAR USA LLC, <br><br> Counterclaim Plaintiff, <br> vs. <br><br> ENVY HAWAII LLC dba VOLVO CARS HONOLULU, <br><br> Counterclaim Defendant, <br> and <br><br> MIKHAIL FEDOTOV, <br><br> Additional Counterclaim Defendant. | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date indicated below and by the methods of service noted below, a true and correct copy of the foregoing document was served to the following persons via CM/ECF:

Kevin W. Herring
Jae B. Park
Benjamin M. Creps
Ashford & Wriston
999 Bishop Street, Suite 1400
P.O. Box 131
Honolulu, Hawaii 96810
kherring@awlaw.com
jpark@awlaw.com
bcreps@awlaw.com

Lyle S. Hosoda
Addison D. Donner
500 Ala Moana Blvd., Ste 3-499
Honolulu, Hawaii 96813
lsh@hosodalaw.com
adb@hosodalaw.com

***Attorneys for Plaintiff/Counterclaim
Defendant Envy Hawaii LLC and
Counterclaim Defendant Mikhail Fedotov***

Dated:  Honolulu, Hawaii, _____, 2018.


/s/_____   ____   _____
MARK J. BENNETT
ANDREW J. LAUTENBACH
Attorneys for Defendant
VOLVO CAR USA LLC

Case 1:17-cv-00040-HG-KSC  Document 67-4  Filed 04/06/18  Page 1 of 52   PageID #:
614
Case 1:18-cv-00415-DKW-RT  Document 1-10  Filed 10/26/18  Page 67 of 120  PageID.186

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br><br>Plaintiff,<br><br>vs.<br><br>VOLVO CAR USA LLC,<br><br>Defendant. | CIVIL NO.  17-00040 HG/KSC<br><br>**VOLVO CAR USA LLC'S SECOND AMENDED AND SUPPLEMENTAL COUNTERCLAIM AGAINST ENVY HAWAII LLC dba VOLVO CARS HONOLULU AND MIKHAIL FEDOTOV** |
| VOLVO CAR USA LLC,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br>Counterclaim Defendant,<br>and<br><br>MIKHAIL FEDOTOV,<br>Additional Counterclaim Defendant. | |

**EXHIBIT B**

**VOLVO CAR USA LLC'S SECOND AMENDED AND SUPPLEMENTAL
COUNTERCLAIM AGAINST ENVY HAWAII LLC dba VOLVO CARS
HONOLULU AND MIKHAIL FEDOTOV**

Defendant/Counterclaim Plaintiff Volvo Car USA, LLC ("VCUSA"), by its

undersigned attorneys, for its Counterclaims against Plaintiff/Counterclaim

Defendant Envy Hawaii LLC d/b/a Volvo Cars Honolulu ("Envy") and Additional

Defendant on Counterclaim Mikhail Fedotov ("Fedotov" and, collectively with

Envy, the "Counterclaim Defendants"), alleges as follows:

## THE PARTIES

1.      VCUSA is a limited liability company organized and existing under

the laws of the State of Delaware with its principal place of business in

Rockleigh, New Jersey.

2.      VCUSA is the successor-in-interest to the rights and business assets

of its direct parent, Volvo Cars of North America, LLC ("VCNA"), including all

contracts and claims referred to herein.  Both VCUSA and VCNA are wholly-

owned subsidiaries of Volvo Car Corporation, the manufacturer of Volvo

products.

3.      Upon information and belief, Envy is a limited liability company

organized and existing under the laws of the State of Hawaii, with its principal

place of business in Honolulu, Hawaii.

4.      Upon information and belief, Fedotov is a citizen of the Russian Federation and is currently a resident of Hawaii and the sole member of Envy.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over the Counterclaims pursuant to 28 U.S.C. § 1367, in that the Counterclaims are so related to the claims asserted in the Complaint that they form part of the same case or controversy.   This Court has independent subject-matter jurisdiction, under 28 U.S.C. § 1331, over VCUSA's Counterclaim under 18 U.S.C. § 2520(a) for Envy's unlawful interception of oral communications for the purpose of obtaining information relating to the operations of a business the operations of which affect interstate commerce, in violation of 18 U.S.C. § 2511(1)(b)(iv)(B).

6.      This Court has personal jurisdiction over the Counterclaim Defendants because they reside in the state of Hawaii.

7.      Venue is proper under 28 U.S.C. § 1391(b)(1) because the Counterclaim Defendants reside in this judicial district.

## ALLEGATIONS OF FACT

A.      **Background**

8.      VCUSA is the exclusive distributor of Volvo brand vehicles, parts and accessories ("Volvo Products") in the United States.

9.     VCUSA distributes Volvo Products in the United States through a network of independently-owned dealers who purchase Volvo Products from VCUSA at wholesale and resell Volvo Products to, and service Volvo Products for, retail customers.

10.     VCUSA appoints dealers to sell and service Volvo Products at designated dealership locations by entering into a Volvo Authorized Retailer Agreement (an "ARA") with each such dealer.

11.     In the ARA, VCUSA is referred to as "Company" and the dealer is referred to as "Retailer."

**B.     The 2012 Authorized Dealer Agreement**

12.     On or about June 26, 2012, Envy entered into an Asset Purchase Agreement (the "APA"), pursuant to which it agreed to buy the Volvo dealership assets of Jackson Volvo, subject to the approval of VCNA.

13.     Pursuant to VCNA's standard procedures, Jackson Volvo submitted the APA, and Envy was required to submit an application, along with various related documents and information, to VCNA for its consideration in deciding whether or not to approve the proposal to sell the dealership to Envy.

14.     During the application process, Envy and Fedotov represented to VCNA that Envoy had five managing members who were making the following capital contributions and would own the following percentages of Envy: (i)

Fedotov, contributing $1,000,338 and owning a 19.75% interest; (ii) Vladimir Franke, contributing $1,000,338 and owning a 19.75% interest; (iii) Evgeny Barzov, contributing $1,506,838 and owning a 29.75% interest; (iv) Dmitri Polunin, contributing $1,506,838 and owning a 29.75% interest; and (v) Eric Roubentz, contributing $50,648 and owning a 1% interest. Envy proposed that Roubentz would serve as the general manager of the dealership.

15.    Envy and each of its members, including Fedotov, represented to VCNA that the source of each member's capital contribution was his own financial resources, and that none of the amount was borrowed.  Upon information and belief, however, a substantial portion of Fedotov's $1,000,338 contribution was borrowed, a fact that Fedotov failed to disclose to VCNA.  VCUSA's information and belief is based on a lawsuit filed against Fedotov by the lender (and Polunin and Barzov) on December 20, 2016.  Plaintiff learned of that lawsuit in February 2017.

16.    Relying on the false information submitted by Envy and Fedotov, VCNA approved Envy's application to purchase the assets of Jackson Volvo and become an authorized Volvo dealer.

17.    On or about December 10, 2012, Envy closed on its APA with Jackson Volvo and signed an ARA with VCNA (the "2012 ARA").

18.     The ARA is a standard form contract that VCUSA enters into with each of its authorized dealers.  It consists of introductory language, a Preamble, and 55 numbered sections, and may contain attachments, schedules, and/or addenda.

19.     While the introductory language and Sections 1 through 7 of the ARA contain information concerning the specific dealer signatory, Sections 1 through 55 contain standard terms and conditions that apply to all Volvo dealers.

20.     VCUSA does not negotiate or modify the standard terms and conditions in Sections 1 through 55 for any of its dealers, for a number of reasons, including that (a) VCUSA believes that all of its authorized dealers should operate on the same terms and conditions; and (b) the relationship between motor vehicle distributors such as VCUSA and their authorized dealers is heavily regulated by the statutory law of the 50 states, and many of these state laws require distributors to afford the same terms and conditions to all of their dealers.

21.     Moreover, it is common knowledge in the industry that the standard provisions of a manufacturer's or distributor's dealer agreement are just that, standard, and are typically not subject to modification on an individual dealer basis.

**C.**     **The Transfer to Fedotov**

22.     In or about September 2014, Envy proposed to VCNA that the sole ownership of Envy would be transferred to Fedotov.

23.     In early December 2014, Fedotov submitted to VCNA an "Application for Authorized Retailer Agreement" in connection with the proposed ownership change.   Fedotov signed the application and dated it December 1, 2014.  In signing the application, Fedotov represented that the information which he had provided was "correct and completed" and acknowledged that "this information will be relied upon by [VCNA] in processing my application."

24.     In the application, Fedotov represented that his "total liabilities" were $600,000, and that this $600,000 liability was for "Membership Interest Purchase Agreement for Envy Hawaii LLC."   Fedotov also submitted to VCNA three documents, each entitled a "Membership Interest Purchase Agreement," which collectively indicated that Fedotov was purchasing the interests of the other members in Envy for a total of $600,000.

25.     In reliance on Fedotov's representations, VCNA approved the change in Envy's ownership structure and the transfer of sole ownership to Fedotov.

26.     On February 20, 2015, Envy and VCNA signed a new ARA listing Fedotov as the sole owner and Manager of Envy (the "2015 ARA").   The 2015 ARA contained the same standard provisions as the 2012 ARA.

27.    Upon information and belief, Fedotov materially misrepresented to VCNA the amount of his total liabilities, and the price at which he had purchased the interests of the former co-owners of Envy.

28.    Upon information and belief, Fedotov actually agreed to pay the former co-owners, and had total liabilities equaling, well over $3 million. VCUSA's information and belief is based on the lawsuit referred to in paragraph 15 of these Counterclaims.

**D.    Envy's Fraudulent Alteration of the July 2016 ARA**

29.    On or about January 1, 2016, VCNA transferred its business assets, including all of its agreements referred to above, to VCUSA.

30.    VCUSA thereafter determined that, in connection with updating its Hawaii business license, its ARA with Envy should be updated to reflect VCUSA's status as the new contracting party.

31.    Accordingly, on or about July 7, 2016, VCUSA shipped three spiral-bound, duplicate originals of the ARA (the "July 2016 ARA") to Envy for execution.  The only differences in the standard terms and conditions between the 2015 ARA and the form of the July 2016 ARA shipped to Envy were (a) the change of the "Company" from VCNA to VCUSA; (b) certain minor revisions to the ARA's "Preamble"; and (c) certain revisions to the trademark provisions of the ARA.  (In November 2015, VCNA had notified all of its dealers that it was

making these changes to the trademark provisions, and VCUSA incorporated them into any ARAs executed thereafter.)

32.     After receiving the duplicate originals of the July 2016 ARA, Envy surreptitiously made material changes to certain of the standard terms and provisions of the agreement before signing it.

33.     Upon information and belief, Envy undid the spiral binding of the duplicate originals and substituted certain pages of the documents with new pages, prepared in the same typeface, which altered material terms and conditions of the ARA.  Envy then redid the spiral binding to prevent VCUSA from detecting that the documents had been tampered with.

34.     Fedotov signed and returned the altered ARAs to VCUSA for countersignature without advising VCUSA that changes had been made to the standard terms and conditions of the agreement.

35.     In addition, before returning the altered ARAs to VCUSA, Envy emailed a copy of the signature page to VCUSA without disclosing that Envy had altered, or intended to alter, other pages of the document.

36.     After VCUSA received the altered July 2016 ARAs, its Regional Vice President, Michael Cottone, reasonably believing that the documents were in the same form as the agreements that VCUSA had sent to Envy for execution,

countersigned the three documents for VCUSA without knowledge that Envy had made alterations to the standard terms and conditions of the ARA.

37.     VCUSA thereafter returned a countersigned copy of the altered July 2016 ARA to Envy.

38.     Upon information and belief, Fedotov signed the July 2016 ARA with knowledge that it had been surreptitiously altered.

39.     VCUSA did not learn that any alterations had been made to the July 2016 ARA until Envy started to demand that VCUSA pay the transportation charges for shipping vehicles to Envy, purportedly pursuant to Sections 16(D)(i) and 16(F) of the ARA.   The standard terms of Sections 16(D)(i) and 16(F) provide exactly the opposite: i.e., as is custom and practice in the industry, all dealers are responsible for the cost of transporting vehicles to their dealerships.

40.     As a result of Envy's demands that VCUSA pay the transportation charges, VCUSA discovered that Envy had altered Sections 16(D)(i) and 16(F) of the July 2016 ARA.   VCUSA thereafter examined the document and found that Envy had surreptitiously made a number of other material alterations to the standard terms and conditions that had never been discussed with or agreed to by VCUSA.

41.     The alterations made by Envy included the following:

(a)     in the second sentence of Section 16(D)(i), the standard form of which provides that "Retailer will pay to the Company the applicable destination charges that the Company established for Retailer for Company Vehicles delivered to Retailer that are in effect at the time of shipment," Envy switched the positions of the words "Retailer" and "Company";

(b)     in the first sentence of Section 16(F), the standard form of which provides that "Retailer is responsible for, and will pay all charges, for demurrage, storage and other expenses accruing after shipment to Retailer," Envy inserted the word "not" before "responsible for" and substituted "is not required to" for "will";

(c)     in the second sentence of Section 16(F), the standard form of which provides that "[i]f diversions of shipments are made upon Retailer's request, or are made by the Company because of Retailer's failure or refusal to accept shipments of Retailer's orders, Retailer will pay all additional charges and expenses incident to such diversion," Envy changed the word "will" to "may";

(d)   in Section 10(A)(vii), the standard form of which provides that the Company may immediately terminate the ARA based on a "[w]illful misrepresentation by Retailer, or any of its agents or employees, in any claim or application for reimbursement by, or payment from the Company," Envy deleted the words "or any of its agents or employees";

(e)   in Section 10(A)(xiii), the standard form of which provides that Company may immediately terminate the ARA based on a "[r]efusal or inability by Retailer to pay any amount Retailer owes to the Company within thirty (30) days after the Company demands payment from Retailer," Envy changed "thirty (30) days" to "ninety (90) days";

(f)   in Section 10(B)(iv), the standard form of which provides that the Company may terminate the ARA if the Retailer fails, within sixty (60) days of receiving written notice from Company, "to improve, alter, or modify its Retailer Facility to meet the requirements in the Company Facilities Guide or other Company Policies, or which Retailer had agreed or represented to the Company that Retailer would make or do," Envy deleted the word "improve" and inserted the words "subject to prior

landlord approval and applicable state laws" at the end of the section;

(g)   in Section 10(B)(viii), the standard form of which provides that Company may terminate the ARA if the Retailer fails, within sixty (60) days of receiving written notice from Company, "to maintain an inventory of new Company Vehicles of the latest model in accordance with the objectives agreed to by Retailer and the Company," Envy substituted the word "unsold" for "new";

(h)   in Section 10(C), Envy deleted the second sentence, which provides that "[i]f Retailer refuses to enter into the applicable improvement plan, the Company may terminate this Agreement in accordance with Section 10A";

(i)   in Section 38, the standard form of which provides that Company will, within sixty (60) days of termination of the ARA, repurchase "[a]ll current model year demonstrator vehicles (as defined by the Company) and registered Volvo service loaners which are no more than one year old," Envy substituted the word "two" for the word "one";

> (j)     in Section 4, the standard form of which provides that, prior to making any changes in the ownership or management of the Dealership, "Retailer agrees to obtain the Company's written approval, which shall not be unreasonably withheld," Envy substituted the words "may agree" for "agrees"; and
>
> (k)     in Section 9(B), the standard form of which requires that the Company be notified within thirty (30) days that the Principal Owner(s) or General Manager of the Retailer has died or become incapacitated, Envy extended the deadline to sixty (60) days.

42.     Upon information and belief, Envy made the foregoing surreptitious changes in a fraudulent attempt to excuse its continuing and/or anticipated breaches of the provisions which it altered.  Some of those breaches are described below.

**E.     Envy's Breaches of Its Obligations**

43.     One of the principal topics of discussion during Envy's application process in 2012 was the Jackson Volvo facility, which failed to comply with VCNA's standards.  Envy informed VCNA that, rather than remain in the Jackson Volvo facility on a long-term basis, Envy planned to build a new facility in accordance with VCNA's standards.  Envy proposed to negotiate a short-term

14

extension of the lease on the Jackson Volvo facility and renovate, redesign and refresh that facility while Envy searched for a long-term facility solution.

44.     In agreements executed in November 2012, Envy agreed, among other things, that: (a) the current facility did not meet VCNA's requirements and, accordingly, Envy would make specified improvements to the facility by October 31, 2013; (b) Envy would develop and secure a plan for an all-new facility acceptable to VCNA by October 31, 2016, and would be operating in the all-new facility by May 1, 2018; (c) Envy would use both the current and planned future locations exclusively for Volvo operations; (d) Envy would maintain a $3 million floor plan for the purchase of new Volvo vehicles; and (e) Envy would meet agreed levels of sales performance and customer satisfaction for sales and service.

45.     Since becoming an authorized Volvo dealer in December 2012, Envy has failed to honor the foregoing commitments.

46.     Envy has (a) failed to make the promised improvements to the current facility and (b) been unable to pursue an acceptable long-term, all-new facility solution.

47.     In addition, Envy has failed to address certain serious deficiencies in the current facility, such as the repair of broken car lifts and the installation of new lifts in its service department and the upgrade of its bathroom despite

promises to VCNA and VCUSA that it would promptly address these deficiencies.

48.   Envy has also repeatedly breached its agreement to use the existing facility solely for its Volvo operations.

49.   In June 2014, VCNA discovered, through the dealership's own website and Facebook site, that Compagna T-Trex motorcycles and three-wheel bikes were being showcased in the Volvo showroom.  When VCNA notified Envy that this was a breach of its obligations, Envy promised that the motorcycles and the bikes would be removed and that such a breach would not occur again.

50.   Notwithstanding Envy's promise, when VCNA's Marketing Manager visited the dealership on September 17, 2014, he discovered two motorcycles being displayed on the showroom floor.  The Marketing Manager advised Envy once again that the display was a breach of the Dealership's obligations, and Envy once again promised that it would use the facility exclusively for its Volvo operations.

51.   In November 2016, however, VCUSA learned that the dealership was operating a car rental company called Envy Rent out of the dealership facilities in violation of its exclusivity obligation.

52.     Envy also failed to maintain the agreed-upon floor plan financing it needed to acquire and stock an adequate inventory of new Volvo vehicles for resale.

53.     On or about August 13, 2014, Bank of America, Envy's floor plan lender, placed the dealership on "finance hold," meaning that the bank would not advance funds for Envy's purchase of any additional Volvo vehicles.

54.     Envy remained on finance hold until on or about December 17, 2014, when the dealership obtained an inadequate temporary flooring line of $1 million.

55.     Envy did not obtain a flooring line in an adequate amount until on or about February 5, 2015, when it obtained a new flooring line with the Bank of Hawaii.

56.     On January 27, 2016, however, the Bank of Hawaii notified VCUSA that it was temporarily suspending the dealership's flooring line. The Bank consequently rejected VCUSA's requests for payment for several vehicles that VCUSA had shipped to the dealership.

57.     In April 2016, the Bank of Hawaii rejected VCUSA's request for payment of $60,000 for a new Volvo XC90 vehicle that VCUSA had shipped to the dealership. Envy thereafter refused to write a check to VCUSA for the XC90 on the ground that $60,000 was a "big amount" for the dealership.

Case 1:17-cv-00040-HG-KSC   Document 67-4   Filed 04/06/18   Page 18 of 52   PageID #:
631
Case 1:18-cv-00415-DKW-RT   Document 1-16   Filed 10/26/18   Page 84 of 120   PageID.203

58.    On or about April 15, 2016, Envy notified VCUSA that it had switched its floor plan from the Bank of Hawaii to NextGear Capital, Inc. ("NextGear").   Envy continued, however, to maintain a Bank of Hawaii account from which VCUSA was to be paid any amount that Envy owed VCUSA on its parts account at the end of each month.

59.    In September 2016, Fedotov complained to VCUSA that the dealership's account with the Bank of Hawaii was overdrawn by $56,000 because its monthly parts account statement with VCUSA showed a debit of $56,000. Fedotov demanded that VCUSA write an apology letter for Envy to show to the Bank.   VCUSA informed Fedotov that the account statement was correct and refused to issue the requested apology.

60.    In October 2016, the Bank of Hawaii rejected VCUSA's request for payment of a $140 debit in Envy's parts account on the ground of "insufficient funds."

61.    By letter dated April 18, 2017, NextGear notified VCUSA that it was suspending Envy's floor plan effective as of April 20, 2017.

62.    By letter dated April 26, 2017, Envy represented to VCUSA that it was "taking action intended to result in the restoration of its flooring line of credit within the next 60 days," and, by email dated May 18, 2017, Envy represented to VCUSA that, "based on developments since [its] April 26, 2017 letter to

Case 1:17-cv-00040-HG-KSC   Document 67-4   Filed 04/06/18   Page 19 of 52   PageID #:
632
Case 1:18-cv-00415-DKW-RT   Document 1-13   Filed 10/26/18   Page 85 of 120   PageID.204

[VCUSA, Envy] anticipates that it will have an adequate flooring line of credit in place on or before June 12, 2017."

63.    Despite these representations, Envy did not have any (much less an adequate) flooring line of credit in place on or before June 12, 2017 and continued to lack any floor plan financing until at least June 20, 2017.

64.    As a result of the suspension of its floor plan and its failure to promptly put a new, adequate flooring line of credit in place, Envy was unable to pay for and take delivery of new Volvo vehicles from April 20, 2017 through at least June 20, 2017, in material breach of its obligations under the ARA.

65.    On or about June 7, 2017, Bank of Hawaii rejected VCUSA's request for payment of $72,031.67, which Envy owed VCUSA on its parts account for the month of May 2017.

66.    As of October 27, 2017, Envy has not paid VCUSA a total of $149,020.37 due and owing to VCUSA for goods and services, despite VCUSA's demands for payment.

67.    Upon information and belief, Envy made the surreptitious alterations to the July 2016 ARA in an attempt to (a) excuse its continuing failures to improve its facility, to maintain an adequate flooring line and consequently an adequate inventory of new Volvo vehicles, and to timely pay charges for which it

is responsible, and (b) avoid termination for the foregoing breaches and/or misrepresentations made by its "agents or employees."

## F.  Violations of Obligations to Customers

68.  In section 36 of the ARA, Envy agreed to provide VCUSA with prompt notice of all Volvo customer complaints and ""to do nothing to affect adversely the ~~Company's~~Company's rights"" under consumer protection laws and regulations.  In Section 37 of the ARA, Envy agreed to treat Volvo customers ""with the utmost respect and honesty," and not to ""engage in any unfair, deceptive, misleading, unethical, fraudulent or otherwise prohibited practice.""  In Section 34 of the ARA, Envy agreed to indemnify and to hold VCUSA harmless from any and all liability, loss, cost or expense, including reasonable attorneys' fees, court costs and costs of litigation, resulting from, among other things, ~~"Retailer's~~"Retailer's unfair, misleading, deceptive or fraudulent trade practices.""

69.  On information and belief, Envy has engaged in a pattern and practice of unfair, misleading, deceptive or fraudulent trade practices.

70.  ~~Envy's~~Envy's conduct has included failure to honor its obligation to pay amounts it is obligated to pay on behalf of Volvo customers relating to ""trade-ins"" and to the purchase of extended warranties and/or service contracts.

71.  When a customer trades in a used vehicle as part of the transaction in which the customer purchases or leases a vehicle from a motor vehicle dealer, the

dealer undertakes the obligation to pay off any amount the customer owes on any loan pertaining to the used vehicle. The dealer has the obligation to pay off the ~~customer's~~customer's loan promptly, before the customer is obligated to make any additional monthly loan payments and before the customer can be held in default on the loan and/or be subject to penalties, interest, and loss of credit standing.

72.     Notwithstanding this obligation, Envy has deliberately failed to pay off customer loans unless and until the customer has threatened to take action against Envy.

73.     For example, on August 5, 2017, a customer named Michael Childress traded in a used Range Rover to Envy when he purchased a new Volvo XC90 from Envy.  Envy failed to pay off ~~the customer's~~Mr. Childress's loan on the traded-in vehicle until on or about October 24, 2017, almost three months after the trade-in.  Envy did not pay off the loan until after the customer complained to VCUSA that the loan had not been paid off, that the loan was now in collection, that the default was ruining his credit, and that Envy would not even answer or return his phone calls.  Envy paid off the loan only after VCUSA notified Envy that it was in breach of Sections 36 and 37 of the ARA and subject to termination for these breaches.

74.     On November 22, 2017, VCUSA received a complaint from customers Eugene and Clardean Lehano that Envy had failed to pay off the

Case 1:17-cv-00040-HG-KSC   Document 67-4   Filed 04/06/18   Page 22 of 52    PageID #:
635
Case 1:18-cv-00415-DKW-RT   Document 1-14   Filed 10/26/18   Page 88 of 120  PageID.207

$8,900 loan balance on a vehicle that they traded in to Envy on June 24, 2017, and as a result they were still making payments on the loan.  Mr. and Mrs. Lehano further complained that Envy had failed to change the trade-in's registration and that as a result (i) they had received two parking tickets for a vehicle they no longer owned or operated and (ii) they had been visited by the police because the trade-in vehicle had been involved in a crime.  Mr. and Mrs. Lehano also complained that Envy had failed to respond to their complaints despite calls and visits to the dealership.  On November 24, 2017, VCUSA relayed this complaint to Envy, pointing out that the complaint was "very, very serious" and asking Envy to explain the situation and advise what steps Envy would take to correct it.  Envy failed to respond to VCUSA's request.

75.   In January 2018, a customer named Jacob Michaels complained to VCUSA concerning a lease transaction with Envy pursuant to which Mr. Michaels traded in a Ford F150 with a loan balance of approximately $28,000.   Envy agreed to and was obligated to pay off the loan balance, but Mr. Michaels complained that Envy had failed to do so.  By letter dated March 9, 2018 from VCUSA's counsel to Envy's counsel, VCUSA notified Envy of its failure to satisfy its obligation to pay off Mr. Michaels' loan and inquired whether Envy intended to fulfill its obligations.  Envy failed to respond to VCUSA's letter.

Case 1:17-cv-00040-HG-KSC   Document 67-4   Filed 04/06/18   Page 23 of 52   PageID #:
636
Case 1:18-cv-00415-DKW-RT   Document 1-14   Filed 10/26/18   Page 89 of 120   PageID.208

76.   In addition, Envy has failed to provide customers who have purchased or leased vehicles from Envy with the necessary paperwork the customers need to register the vehicles.

77.   On November 10, 2017, VCUSA received a complaint from customer Lindsey Dymond that Envy had failed to provide him with the title and registration to a vehicle that he purchased in May 2017, that Envy had been "dodging [his] calls," and that when he visited the dealership he had to "force [his] way into the manager's office."

78.   Subsequently, at least three additional customers complained to VCUSA that Envy had failed to provide them with needed registration materials: Yoko Nagashima; Stephen Holder; and Sherman Wilson.  By letter dated March 9, 2008 from VCUSA's counsel to Envy's counsel, VCUSA informed Envy of its failure to satisfy its obligations to these three customers and inquired whether Envy intended to do so.  Envy failed to respond to VCUSA's letter.

79.   74. On information and belief, Envy has also failed to turn over money to vendors that customers have paid to Envy to purchase services such as extended warranties or service contract.

80.   75. When selling a vehicle to a customer, a dealer may also sell an extended warranty or service contract that is offered by a third-party vendor.  If the customer agrees to purchase and pays the dealer for the extended warranty or

service contract, the dealer has an obligation to turn over to the third-party vendor the amount necessary to procure the coverage contracted by the customer.  If the dealer fails to do so, then when the customer attempts to obtain repairs pursuant to the extended warranty or service contract – sometimes years after the purchase of the vehicle – the customer will learn that it has no coverage for the repairs.

81.   76. Envy has taken funds from customers and failed to procure the contracted-for coverage from the third party vendors.  For example, in July 2017, a customer brought a Volvo that he had purchased from Envy in 2014 in for repairs at a Volvo dealership in Portland, Oregon.  At the time of purchasing the vehicle, the customer had paid Envy for an extended service contract offered by Volvo Car Financial Services ("VCFS").  Envy, however, had never turned the payment over to VCFS to procure the contract for the customer.  On information and belief, this was and is a routine practice at Envy.

82.   77. Envy's Envy's unfair, misleading, deceptive, or fraudulent trade practices have caused and continue to cause harm to VCUSA's VCUSA's business and reputation in Hawaii, and threaten to expose VCUSA to liability to customers under consumer protection laws, from which Envy is obligated to hold VCUSA harmless and to indemnify VCUSA from all loss, cost, or expense, including, without limitation reasonable attorney's fees, court costs and costs of litigation.

## G.    Unlawful Surreptitious Recording

83.  ~~78.~~ Envy is part of VCUSA's Western Region, which has its headquarters in Irvine, California.

84.  ~~79.~~ Because Envy is located in Hawaii, it often communicates with the Western Region for business purposes by telephone.

85.  ~~80.~~ Envy used an electronic recording device to secretly record at least seven (7) confidential telephone conversations between Fedotov and/or John Martinho, Envy's Chief Operating Officer, and representatives of the Western Region located in California.  VCUSA first learned of these recordings when Envy produced them in discovery on October 17, 2017.

86.  ~~81.~~ The recordings were of conversations that were personal to the parties, relating to Envy's business plans and operations.  Certain of those conversations were placed or received on cellular phones.

87.  ~~82.~~ Each of these recordings was made without the VCUSA representative's knowledge or consent.

88.  ~~83.~~ In addition, on February 20 and 21, 2017, Martinho surreptitiously recorded the confidential proceedings at a Volvo Retailer Conference (the "Conference") in Yountville, California, which he attended as a representative of Envy.

89. ~~84.~~ One of VCUSA's major purposes in convening the Conference was to share confidential business plans and marketing information with Volvo retailers, including the display of new Volvo models which have not yet been publicly announced.

90. ~~85.~~ Because of the confidential nature of the information shared with Volvo retailers at the Conference, participants were not permitted to bring in cell phones or any other devices with which they could record the proceedings. To enforce this prohibition, VCUSA required participants to go through airport-style metal detectors before entering the Conference.

91. ~~86.~~ In violation of this prohibition, and unknown to VCUSA, Martinho brought a pen containing a concealed recording device into the Conference.

92. ~~87.~~ During a confidential presentation on Tuesday, February 21, 2017, the second day of the Conference, the security staff at the Conference noticed Martinho acting strangely, including continually grabbing at his pocket pen and moving it in a twisting motion.

93. ~~88.~~ After the presentation, security staff approached Martinho and asked to see the pen. Martinho initially denied having a pen. After security staff specified the location of the pen (i.e., in the inside pocket of Martinho's suit), Martinho turned over the pen.

Case 1:17-cv-00040-HG-KSC   Document 67-4   Filed 04/06/18   Page 27 of 52    PageID #:
640
Case 1:18-cv-00415-DKW-RT   Document 1-10   Filed 10/26/18   Page 93 of 120   PageID.212

94.  89. The pen had a camera with a 64-gigabyte SD memory card. Martinho admitted that he was using the device to record the Conference, although he denied having photographed the vehicles.

95.  90. Martinho was excluded from the remainder of the Conference.

96.  91. By letter from VCUSA's counsel to Envy's California counsel on February 22, 2017, VCUSA demanded that Envy turn over to VCUSA any recordings, including notes, Martinho had made of the Conference.

97.  92. Envy  has did not responded respond to VCUSA's demand.

## H.   Envy's Termination and Subsequent Cybersquatting

98.   As a result of Envy's repeated violations of the rights of Volvo customers and related breaches of its obligations under the ARA, VCUSA issued a notice of termination to Envy dated December 1, 2017.  The notice cited Envy's failure to pay off customer loans on trade-ins and its failure to provide customer Lindsey Dymond with his vehicle title and registration.  The notice stated that the ARA would terminate on the sixteenth (16th) day after the date on which Envy received the notice.

99.   Rather than promptly contest the basis of the notice of termination and seek a stay of the termination, Envy closed its doors on or about December 12, 2017.

100.   Shortly thereafter, VCUSA decided to appoint the Cutter automotive group as the new Volvo dealer in Hawaii.

101.   On or about December 29, 2017, an Envy employee unlawfully acquired the rights to the URL and domain name cuttervolvocars.com.   The organization for which the Envy employee registered the domain name was "Envy Rent," which Envy has represented, in responding to discovery requests in this case, is a trade or "doing business as" name for Envy itself.   In addition, the domain name was registered using an email address belonging to Fedotov (mike@envyAG.com) and the phone number of Envy Hawaii LLC d/b/a Volvo Cars of Honolulu.

102.   Upon information and belief, Envy's acquisition of the cuttervolvocars.com domain name was done in a bad faith attempt to profit by acquiring a URL with the trade name of the new Hawaii Volvo retailer that VCUSA was about to appoint, and/or to maliciously retaliate against VCUSA by interfering with any attempt by Volvo's new authorized dealer in Hawaii to use its trade name to market its goods and services on the internet.

103.   Section 10.F of the ARA provides that "[u]pon termination, Retailer agrees to discontinue the use of any trademarks and trade names in accordance with the terms set out in Attachment 1." Attachment 1 to the ARA is entitled "Trademark Sub-License and License Agreement" (the "License Agreement").

28

The License Agreement regulates Envy's use of certain Volvo trademarks (referred to in the agreement as the "Volvo Trademarks and VCC Trademarks"), including VOLVO and the VOLVO logo.

104.   Section 10.1 of the License Agreement provides that Envy's license "shall unconditionally terminate automatically, without need for a prior termination or court intervention, on the date of expiration or termination of the [ARA] (irrespective of the reasons therefor)."   Section 11 further provides that upon such a termination, "the Retailer shall . . . forthwith cease use of the Volvo Trademarks and VCC Trademarks and shall consent to cancellation of any entry of the Retailer as a sub-licensee of the Volvo Trademarks and licensee of the VCC Trademarks and shall execute any document necessary for that purpose."

105.   By letter dated February 2, 2018, from VCUSA's counsel to Envy's counsel, VCUSA demanded that Envy immediately surrender the cuttervolvocars.com URL to VCUSA.   In a responsive letter from its counsel dated February 8, 2018, Envy claimed the URL had been acquired by an Envy employee whose whereabouts "are presently unknown" and that Envy had "no obligation" to cause the surrender of the URL.   In a responsive letter from its counsel dated February 16, 2018, VCUSA pointed out that Envy is responsible for the acts of Envy's employee, undertaken in Envy's trade name, using Envy's telephone number and the email address of Envy's sole owner as the contact

Case 1:17-cv-00040-HG-KSC   Document 67-4   Filed 04/06/18   Page 30 of 52   PageID #:
643
Case 1:18-cv-00415-DKW-RT   Document 1-10   Filed 10/26/18   Page 96 of 120   PageID.215

information for the owner of the URL, and VCUSA accordingly repeated its demand that Envy surrender the URL.  Envy has not responded to VCUSA's February 16, 2018 letter, and has failed to surrender the URL.

106.   Envy's acquisition of, and failure to surrender, the URL is a violation of VCUSA's trademark rights and of Envy's obligations under the ARA and the License Agreement.  VCUSA has been injured by Envy's misappropriation of its Volvo mark and Envy's interference with its authorized dealer's use of its trade name to market Volvo goods and services in Hawaii.

**I.     Unjust Enrichment of Envy**

107.   VCUSA has a "Margin and Bonus Program" pursuant to which, among other things, it pays bonuses to its dealers to assist them in retailing Volvo products.  Among other bonuses available under the program, VCUSA pays the dealer a bonus calculated as a percentage of the Manufacturer Suggested Retail Price ("MSRP") of each vehicle VCUSA wholesales to the dealer.

108.   Long before VCUSA issued the notice of termination to Envy, Envy had defaulted on its obligation to repay millions of dollars to its floorplan lender, NextGear Capital ("NGC").  Envy's vehicle inventory served as security for Envy's borrowings from NGC.  Upon information and belief, NGC had agreed to forbear on seizing the vehicles in the hope that Envy would sell its Volvo dealership and use the proceeds to repay NGC.

109.   At or about the time that Envy closed its doors in December 2017, NGC took possession of Envy's new Volvo vehicle inventory pursuant to its rights as a secured lender.

110.   VCUSA purchased from NGC 29 new, unsold Volvo vehicles which it had previously wholesaled to Envy and on which it had previously made bonus payments to Envy in the aggregate amount of $73,904.10.

111.   VCUSA thereafter re-wholesaled the 29 new, unsold Volvo vehicles to Cutter Volvo and, pursuant to the Margin and Bonus Program, paid Cutter Volvo an aggregate bonus for the vehicles of $73,904.10.

112.   Because Envy did not use the bonus money for the purpose it was intended – i.e., to assist in retailing the vehicles – and because VCUSA had to re-wholesale the vehicles to another Volvo dealer and provide the bonus money to that dealer, Envy was unjustly enriched in the amount of $73,904.10 and VCUSA suffered damages in that amount.

## FIRST COUNTERCLAIM (Against Envy and Fedotov)

113.   93.  VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through 92112 of these Counterclaims as if fully set forth herein.

114.   94.  In applying for approval of Envy's acquisition of the assets of Jackson Volvo in 2012, Envy and Fedotov materially misrepresented Fedotov's

financial condition by failing to disclose that Fedotov had borrowed hundreds of thousands of dollars.

115. 95. Envy and Fedotov misrepresented Fedotov's financial condition for the purpose of inducing VCNA to approve Envy's acquisition of the Jackson Volvo assets and to appoint Envy as a Volvo dealer.

116. 96. VCNA justifiably relied on Counterclaim Defendants' representations concerning Fedotov's financial condition in approving Envy's acquisition of the Jackson Volvo assets and in appointing Envy as a Volvo dealer.

117. 97. VCUSA has suffered substantial damages as a result of Counterclaim Defendants' fraud, as it has been saddled with a dealer that is financially unstable, has been unable to maintain adequate floor plan financing for the acquisition of Volvo vehicle inventory, has committed numerous breaches of its contractual obligations as set forth in paragraphs 43-66 of these Counterclaims, has engaged in fraudulent, unethical, and/or criminal conduct as set forth in paragraphs 15, 23-42, and 68-74112 of these Counterclaims, and has suffered a significant decline in sales and service performance since Fedotov acquired sole ownership.

118. 98. By reason of the foregoing, VCUSA is entitled to recover damages resulting from Counterclaim Defendants' fraud.

119. ~~99.~~ By reason of the foregoing, VCUSA is also entitled to an award of punitive damages against Counterclaim Defendants in an amount to be determined at trial.

## SECOND COUNTERCLAIM (Against Envy and Fedotov)

120. ~~100.~~ VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through ~~99~~119 of these Counterclaims as if fully set forth herein.

121. ~~101.~~ In applying for approval of the transfer of sole ownership of Envy to Fedotov in 2014, Envy and Fedotov materially misrepresented Fedotov's financial condition by falsely representing that his total liabilities were $600,000 and that the other owners of Envy had agreed to transfer their ownership interests to Fedotov for a total of $600,000, when in fact Fedotov had liabilities of over $3 million and had agreed to pay the other owners of Envy over $3 million for their ownership shares.

122. ~~102.~~ Envy and Fedotov misrepresented Fedotov's financial condition for the purpose of inducing VCNA to approve the transfer of sole ownership of Envy to Fedotov.

123. ~~103.~~ VCNA justifiably relied on Counterclaim Defendants' representations concerning Fedotov's financial condition in approving the transfer of sole ownership of Envy to Fedotov.

124. 104. VCUSA has suffered substantial damages as a result of Counterclaim Defendants' fraud, as it has been saddled with a dealer that is financially unstable, has been unable to maintain adequate floorplan financing for the acquisition of Volvo vehicle inventory, has committed numerous breaches of its contractual obligations as set forth in paragraphs 43-66 of these Counterclaims, has engaged in fraudulent, unethical and/or criminal conduct as set forth in paragraphs 15, 23-42, and 68-74112 of these Counterclaims, and has suffered a significant decline in sales and service performance since Fedotov acquired sole ownership.

125. 105. By reason of the foregoing, VCUSA is entitled to recover damages resulting from Counterclaim Defendants' fraud.

126. 106. By reason of the foregoing, Plaintiff is also entitled to an award of punitive damages against Counterclaim Defendants in an amount to be determined at trial.

## THIRD COUNTERCLAIM (Against Envy)

127. 107. VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through 106126 of these Counterclaims as if fully set forth herein.

128. 108. Envy fraudulently altered certain standard provisions of the July 2016 ARA, including the alterations listed in paragraph 41 above.

129.  ~~109.~~ Envy had a duty to disclose to VCUSA the fact that it had made the alterations because Envy knew that VCUSA was about to countersign the July 2016 ARA under a mistake of fact, i.e., the reasonable belief that Envy had signed the July 2016 ARA in the same form in which VCUSA had sent it to the Envy.

130.  ~~110.~~ Envy also had a duty to disclose to VCUSA the fact that it made the alterations because, under the customs of trade and the other objective circumstances, VCUSA would reasonably expect a disclosure of that fact.

131.  ~~111.~~ Envy failed to disclose to VCUSA the fact that it made the alterations.

132.  ~~112.~~ VCUSA signed the July 2016 ARA without reading the provisions that Envy had surreptitiously altered in the mistaken but reasonable belief that the document was in the same form in which VCUSA had sent it to the Envy for signature.

133.  ~~113.~~ By reason of the foregoing, VCUSA requests (a) rescission of the altered provisions and reformation of the July 2016 ARA to conform the altered provisions to the standard provisions of the ARA; and/or (b) a declaratory judgment that VCUSA is not bound by any of the provisions of the July 2016 ARA that Envy altered.

## FOURTH COUNTERCLAIM (Against Envy and Fedotov)

134. ~~114.~~ VCUSA repeats and realleges each and every one of its allegations in paragraphs 1 through ~~113~~133 of these Counterclaims as if fully set forth herein.

135. ~~115.~~ Counterclaim Defendants' failure to disclose to VCUSA the fact that material alterations had been made to the July 2016 ARA was done with the intent to induce, and did induce, VCUSA to countersign the document.

136. ~~116.~~ In countersigning the document, VCUSA justifiably relied on Counterclaim Defendants' failure to disclose that material alterations had been made to its terms and conditions.

137. ~~117.~~ VCUSA has suffered damages as a result of Counterclaim Defendants' fraud.

138. ~~118.~~ By reason of the foregoing, VCUSA is entitled to an award of damages against Counterclaim Defendants in an amount to be determined at trial.

139. ~~119.~~ By reason of the foregoing, VCUSA is also entitled to an award of punitive damages against Counterclaim Defendants in an amount to be determined at trial.

## FIFTH COUNTERCLAIM (Against Envy)

140. ~~120.~~ VCUSA repeats and realleges each and every one of its allegations in paragraphs 1 through ~~119~~139 of these Counterclaims as if fully set forth herein.

141. ~~121.~~ Section 17 of the ARA requires Envy to pay for Volvo Products purchased by Envy "in cash in advance or by other payment methods [VCUSA] approves in writing," and requires Envy to "pay all collection costs, including but not limited to, reasonable attorneys' fees, costs and expenses of litigation."

142. ~~122.~~ Envy has breached the July 2016 ARA by failing to timely pay VCUSA $~~149,020.37~~213,538.08 due and owing to VCUSA on ~~Envy's~~Envy's parts account through the present.

143. ~~123.~~ Alternatively and additionally, Envy is liable to VCUSA in the amount of $~~149,020.37~~213,538.08 for goods and/or services purchased by Envy from VCUSA but not timely paid for by Envy.

144. ~~124.~~ By reason of the foregoing, Envy is liable to VCUSA in the amount of $~~149,020.37~~213,538.08, plus ~~VCUSA's~~VCUSA's collection costs, including but not limited to reasonable attorneys' fees and costs and expenses of litigation.

## SIXTH COUNTERCLAIM (Against Envy)

145. ~~125.~~ VCUSA repeats and realleges each and every one of its allegations in paragraphs 1 through ~~124~~144 of these Counterclaims as if fully set forth herein.

146. ~~126.~~ The relationship between VCUSA and Envy is governed by the standard provisions of the ARA.

147. ~~127.~~ Section 37 of the ARA provides that "Company and Retailer each recognize the importance of dealing with each other in an open and honest manner."

148. ~~128.~~ Section 37 of the ARA further provides that "Retailer will not engage in any unfair, deceptive, misleading, unethical, fraudulent or otherwise prohibited practice."

149. ~~129.~~ The ARA also contains an implied covenant of good faith and fair dealing.

150. ~~130.~~ Envy breached its obligations under Section 37, as well as its implied covenant of good faith and fair dealing, by surreptitiously altering certain of the standard provisions of the July 2016 ARA and failing to disclose to VCUSA the fact that it made such alterations.

151. ~~131.~~ By reason of the foregoing, VCUSA has suffered damages in an amount to be determined at trial.

152. ~~132.~~ By reason of the foregoing, VCUSA is also entitled to recover its reasonable attorney's fees and litigation expenses incurred in this action.

## SEVENTH COUNTERCLAIM (Against Envy)

153. ~~133.~~ VCUSA repeats and realleges each and every one of its allegations in paragraphs 1 through ~~132~~152 of these Counterclaims as if fully set forth herein.

154. ~~134.~~ VCUSA brings this claim under 18 U.S.C. § 2520(a), which grants a private right of action to any person whose oral communication is intercepted in violation of Chapter 119 of Part I of Title 18, which includes 18 U.S.C. § 2511.

155. ~~135.~~ Under 18 U.S.C. § 2511(1)(b)(iv)(B), any person who "intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when… such use or endeavor to use… obtains or is for the purpose of obtaining information relating to the operations of any business… the operations of which affect interstate or foreign commerce," has committed a violation of Chapter 119.

156. ~~136.~~ VCUSA is a business the operations of which affect interstate or foreign commerce.

157. ~~137.~~ Martinho's use of, or endeavor to use, the pen for the purpose of obtaining confidential information at the Conference was a violation of 18 U.S.C. § 2511(1)(b)(iv)(B).

158. ~~138.~~ Martinho attended the Conference as an agent of Envy.

159. ~~139.~~ In addition, upon information and belief, Envy procured Martinho's use or endeavor to use the recording device concealed in the pen to obtain confidential information relating to VCUSA's operations.

160. ~~140.~~ By reason of the foregoing, VCUSA seeks an award of $10,000 in statutory damages under 18 U.S.C. § 2520(c)(2), an injunction prohibiting Envy from any future violations of § 2511, and an order requiring Envy to turn over any other recordings it has made in violation of § 2511, along with reasonable attorney's fees and other litigation costs reasonably incurred.

## EIGHTH COUNTERCLAIM (Against Envy)

161. ~~141.~~ VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through ~~140~~160 of these Counterclaims as if fully set forth herein.

162. ~~142.~~ This claim is brought under California Penal Code § 637.2, which grants a private right of action to any person who has been injured by a violation of Chapter 1.5 of Title 15 of Part 1 of the Penal Code, which includes §§ 632 and 632.7.

163. ~~143.~~ California Penal Code § 632 provides in pertinent part: "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic… recording device to… record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation, or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment."

164. ~~144.~~ California Penal Code § 632.7 provides in pertinent part: "Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment."

165. ~~145.~~ Envy violated California Penal Code §§ 632 and 632.7 by using an electronic recording device to secretly record at least seven (7) telephone conversations with VCUSA representatives located in California.

166. ~~146.~~ In addition, Envy violated California Penal Code § 632 when Martinho used or endeavored to use the pen to record the confidential proceedings at the Conference in Yountville, California.

167. ~~147.~~ By reason of the foregoing, VCUSA seeks recovery of not less than $5,000 in statutory damages, per violation, or three times the amount of VCUSA's actual damages, whichever is greater; an injunction preventing Envy from any further violations of Chapter 1.5; and an order requiring Envy to turn over to VCUSA any and all recordings made of telephone conversations with VCUSA representatives, or at the Conference.

## NINTH COUNTERCLAIM (Against Envy)

168. ~~148.~~ VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through ~~147~~167 of these Counterclaims as if fully set forth herein.

169. ~~149.~~ Envy has breached Sections 36 and 37 of the ARA by failing to promptly pay off customer loans and by failing to procure extended warranties and/or other service contracts contracted and paid for by customers.

170. ~~150.~~ By reason of the foregoing, Envy is liable to VCUSA in damages for harm to VCUSA's reputation and loss of business resulting from Envy's unfair, misleading, deceptive, or fraudulent trade practices.

171. ~~151.~~ By reason of the foregoing, VCUSA is also entitled to a declaratory judgment that Envy is obligated to hold VCUSA harmless and to indemnify VCUSA from all loss, cost, or expense, including without limitation reasonable attorneys' fees, court costs and costs of litigation, resulting from ~~Envy's~~Envy's unfair, misleading, deceptive, or fraudulent trade practices.

**TENTH COUNTERCLAIM (Against Envy)**

172. VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through 171 of these Counterclaims as if fully set forth herein.

173. Envy registered the domain name cuttervolvocars.com with a bad faith intent to profit from a domain name that incorporates the Volvo mark, which was distinctive at the time of registration of the domain name, and was famous at the time of registration of the domain name.

174. Envy's bad faith is demonstrated by (among other things) the following:  at the time of registering the domain name, Envy was aware that VCUSA intended to appoint Cutter Volvo as an authorized Volvo dealer in Hawaii following the closure of Envy's Volvo dealership; Envy has no trademark or intellectual property rights in the cuttervolvocars.com domain name; the domain name does not consist of the legal name of Envy or any name that is commonly used to identify Envy; Envy has never used the domain name in connection with the bona fide offering of any goods or services; Envy has not made and cannot

make bona fide noncommercial or fair use of the Volvo mark in a site accessible under the domain name; Envy acted with the evident intent to divert consumers from the websites of Cutter Volvo and VCUSA; and Envy's continued use of any Volvo mark is a violation of its obligations under the ARA and the License Agreement.

175. By reason of the foregoing, Envy has violated 15 U.S.C. § 1125(d)(1)(A), the ARA and the License Agreement.

176. By reason of the foregoing, VCUSA requests (a) an award of either actual damages or statutory damages in the amount of $100,000 pursuant to 15 U.S.C. § 1117(d), to be elected by VCUSA before final judgment, (b) an award of attorney's fees pursuant to 15 U.S.C. § 1117(a), on the ground that this is an "exceptional" case because, among other things, Envy maliciously registered the cuttervolvocars.com domain name to retaliate against VCUSA, and (c) an order requiring forfeiture and/or cancellation of the domain name, and the transfer of the domain name to VCUSA or its designee, pursuant to 15 U.S.C. § 1125 (d) (1) (C).

## ELEVENTH COUNTERCLAIM (Against Envy)

177. VCUSA repeats and realleges each and every allegation set forth in paragraphs 1 through 176 of these Counterclaims as if fully set forth herein.

178.   Envy received bonuses from VCUSA in the amount of $73,904.10 upon its wholesale purchase of 29 new Volvo vehicles.

179.   The purpose of the bonus was to assist Envy in retailing the vehicles.

180.   Envy failed to retail the vehicles.

181.   Following the closure of Envy's Volvo dealership, VCUSA repurchased the 29 vehicles from Envy's floor plan lender and re-wholesaled the vehicles to Cutter Volvo.

182.   Upon wholesaling the vehicles to Cutter Volvo, VCUSA was obligated under its Margin and Bonus Program to provide the $73,904.10 in bonuses to Cutter Volvo.

183.   By reason of the foregoing, Envy has been unjustly enriched in the amount of $73,904.10, and VCUSA has been damaged in that same amount.

184.   By reason of the foregoing, VCUSA is entitled to recover the $73,904.10 from Envy as unjust enrichment and/or money had and received.

**WHEREFORE**, VCUSA demands judgment as follows:

(i)      on the First Counterclaim, an award of damages and punitive damages in amounts to be determined at trial;

(ii)     on the Second Counterclaim, an award of damages and punitive damages in amounts to be determined at trial;

45

(iii) on the Third Counterclaim, (a) rescission of the altered provisions and reformation of the July 2016 ARA to conform to the standard provisions of the ARA; and (b) a declaratory judgment that VCUSA is not bound by any of the provisions of the July 2016 ARA that Envy altered;

(iv) on the Fourth Counterclaim, an award of damages and an award of punitive damages in amounts to be determined at trial;

(v) On the Fifth Counterclaim, an award of $~~149,020.37~~213,538.08 plus VCUSA's collection costs, including reasonable attorney's fees and the costs and expenses of litigation;

(vi) on the Sixth Counterclaim, an award of damages in an amount to be determined at trial, and an award of reasonable attorney's fees and litigation expenses in amount to be determined by the Court;

(vii) on the Seventh Counterclaim, (a) an award of an award of $10,000 in statutory damages under 18 U.S.C. § 2520(c)(2), (b) an injunction prohibiting Envy from any future violations of § 2511, (c) an order requiring Envy to turn over any other recordings it has made in violation of § 2511, and (d) an award of reasonable attorney's fees and litigation expenses in an amount to be determined by the Court;

(viii)   on the Eighth Counterclaim, (a) an award of not less than $5,000 in statutory damages, per violation, or three times the amount of VCUSA's actual damages, whichever is greater, (b) an injunction preventing Envy from any further violations of Chapter 1.5, and (c) an order requiring Envy to turn over to VCUSA any and all recordings made of telephone conversations with VCUSA representatives, or at the Conference;

(ix)   on the Ninth Counterclaim, (a) an award of damages in an amount to be determined at trial; and (b) a declaratory judgment that that Envy is obligated to hold VCUSA harmless and to indemnify VCUSA from all loss, cost, or expense, including without limitation reasonable attorneys' fees, court costs and costs of litigation, resulting from ~~Envy's~~Envy's unfair, misleading, deceptive, or fraudulent trade practices; ~~and~~

(x)   on the Tenth Counterclaim, (a) an award of either actual damages or statutory damages in the amount of $100,000, to be elected by VCUSA before final judgment, (b) an award of attorney's fees, and (c) an order requiring forfeiture and/or cancellation of the cuttervolvocars.com domain name, and the transfer of the domain name to VCUSA or its designee;

47

Case 1:17-cv-00040-HG-KSC   Document 67-4   Filed 04/06/18   Page 48 of 52   PageID #:
661
Case 1:18-cv-00415-DKW-RT   Document 1-16   Filed 10/26/18   Page 114 of 120   PageID.233

(xi)     on the Eleventh Counterclaim, an award of damages and/or restitution

in the amount of $73,904.10; and

any related preliminary and/or permanent injunctive relief, interest, costs, and such

other and further relief as the Court deems just and proper.

Dated:  Honolulu, Hawaii, _____, 20172018.

/s/    *Mark J. Bennett*_____
MARK J. BENNETT
ANDREW J. LAUTENBACH
Attorneys for Defendant
VOLVO CAR USA LLC

Case 1:17-cv-00040-HG-KSC   Document 67-4   Filed 04/06/18   Page 49 of 52   PageID #:
662
Case 1:18-cv-00415-DKW-RT   Document 1-162   Filed 10/26/18   Page 115 of 120   PageID.234

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>VOLVO CAR USA LLC,<br><br>　　　　　Defendant. | CIVIL NO.　17-00040 HG/KSC<br><br>**JURY DEMAND** |
| VOLVO CAR USA LLC,<br><br>　　　　　Counterclaim Plaintiff,<br>　vs.<br><br>ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br>　　　　　Counterclaim Defendant,<br>and<br><br>MIKHAIL FEDOTOV,<br><br>　　　　Additional Counterclaim Defendant. | |

**JURY DEMAND**

  Counterclaim Plaintiff Volvo Car USA LLC hereby demands a trial by jury

on all issues so triable.

  Dated:　Honolulu, Hawaii, _____, ~~2017~~2018.

       /s/ *Mark J. Bennett*_____
       MARK J. BENNETT
       ANDREW J. LAUTENBACH
       Attorneys for Defendant
       VOLVO CAR USA LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>VOLVO CAR USA LLC,<br><br>　　　　　Defendant. | CIVIL NO.  17-00040 HG/KSC<br><br>**CERTIFICATE OF SERVICE** |
| VOLVO CAR USA LLC,<br><br>　　　　　Counterclaim Plaintiff,<br>　vs.<br><br>ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br>　　　　　Counterclaim Defendant,<br>and<br><br>MIKHAIL FEDOTOV,<br><br>　　　　Additional Counterclaim Defendant. | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date indicated below and by the methods of service noted below, a true and correct copy of the foregoing document was served to the following persons via CM/ECF:

Case 1:17-cv-00040-HG-KSC   Document 67-4   Filed 04/06/18   Page 51 of 52   PageID #:
864
Case 1:18-cv-00415-DKW-RT   Document 1-16   Filed 10/26/18   Page 117 of 120  PageID.236

Kevin W. Herring
Jae B. Park
Benjamin M. Creps
Ashford & Wriston
999 Bishop Street, Suite 1400
P.O. Box 131
Honolulu, Hawaii 96810
kherring@awlaw.com
jpark@awlaw.com
bcreps@awlaw.com

Lyle S. Hosoda
Addison D. Donner
500 Ala Moana Blvd., Ste 3-499
Honolulu, Hawaii 96813
lsh@hosodalaw.com
adb@hosodalaw.com

***Attorneys for Plaintiff/Counterclaim
Defendant Envy Hawaii LLC and
Counterclaim Defendant Mikhail Fedotov***

Dated:  Honolulu, Hawaii, _____, ~~2017~~2018.


                         /s/    *Mark J. Bennett*_____
                         MARK J. BENNETT
                         ANDREW J. LAUTENBACH
                         Attorneys for Defendant
                         VOLVO CAR USA LLC

Case 1:17-cv-00040-HG-KSC   Document 67-4   Filed 04/06/18   Page 52 of 52   PageID #:
665
Case 1:18-cv-00415-DKW-RT   Document 1-16   Filed 10/26/18   Page 118 of 120   PageID.237

| Summary report: Litéra® Change-Pro 7.5.0.135 Document comparison done on 4/6/2018 1:58:19 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://HLEAST/WASHINGT/10809851/6 | |
| **Modified DMS:** iw://HLEAST/WASHINGT/10809851/8 | |
| **Changes:** | |
| Add | 204 |
| Delete | 129 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 333 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br><br>        Plaintiff,<br><br>    vs.<br><br>VOLVO CAR USA LLC,<br><br>        Defendant. | CIVIL NO.  17-00040 HG/KSC |
| VOLVO CAR USA LLC,<br><br>    Counterclaim Plaintiff,<br><br>    vs.<br><br>ENVY HAWAII LLC dba VOLVO CARS HONOLULU,<br>        Counterclaim Defendant,<br>and<br><br>MIKHAIL FEDOTOV,<br>    Additional Counterclaim Defendant. | |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date indicated below and by the methods of service noted below, a true and correct copy of the foregoing document was served to the following persons at their last known address and via CM/ECF:

Kevin W. Herring
Jae B. Park
Benjamin M. Creps
Ashford & Wriston
999 Bishop Street, Suite 1400
P.O. Box 131
Honolulu, Hawaii 96810
kherring@awlaw.com
jpark@awlaw.com
bcreps@awlaw.com

Lyle S. Hosoda
Addison D. Donner
500 Ala Moana Blvd., Ste 3-499
Honolulu, Hawaii 96813
lsh@hosodalaw.com
adb@hosodalaw.com

***Attorneys for Plaintiff/Counterclaim
Defendant Envy Hawaii LLC and
Counterclaim Defendant Mikhail Fedotov***

Dated:  Honolulu, Hawaii, April 6, 2018.

*/s/ Mark J. Bennett*
MARK J. BENNETT
ANDREW J. LAUTENBACH
JOHN J. SULLIVAN
COLM A. MORAN
RYAN L. FORD

Attorneys for Defendant/Counterclaim
Plaintiff VOLVO CAR USA LLC