GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

JOHNATHAN C. BOLTON     9650-0
CHRISTOPHER P. ST. SURE  1001-0
DYLAN J. TASCHNER        10618-0
First Hawaiian Center
999 Bishop Street, Suite 1600
Honolulu, Hawai'i 96813
Telephone: (808) 547-5600
Facsimile:  (808) 547-5880

Attorneys for Plaintiff
NEXTGEAR CAPITAL, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ENVY HAWAII LLC d/b/a WINDWARD MOTORS d/b/a V RENT A CAR d/b/a VOLVO OF HONOLULU and MIKHAIL BORISOVICH FEDOTOV, <br><br> Defendants. | Civil No. 1:18-cv-00415-DKW-KSC <br><br> DECLARATION OF RYAN HAWLEY; EXHIBITS "A" – "K" |

### DECLARATION OF RYAN HAWLEY

I, RYAN HAWLEY, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am the Assistant Vice President of Risk and Recovery for

NEXTGEAR CAPITAL, INC. ("Plaintiff", "Lender", or "NextGear").  I am over

the age of eighteen (18) years, I have personal knowledge of the facts set forth in this declaration (other than facts which are alleged on information and belief, which facts I believe to be true) and I am otherwise fully competent and authorized to make this declaration. If called to testify in this matter, I could and would testify competently to the facts set forth herein. I make this Declaration in support of Plaintiff's Motion for Appointment of a Receiver (the "Motion") in this case.

2. I am the custodian of records of Plaintiff, and I have personally reviewed the records and files in Plaintiff's possession regarding this matter, which records and files are kept by Plaintiff in the regular course of its business, which records and files are under Plaintiff's custody and control, and which records and files and the entries therein were made at or near the time of the acts by me or a person or persons duly authorized to make the same. All of the exhibits referenced by me in this Declaration are contained in the aforementioned records and files of Plaintiff.

3. Plaintiff NEXTGEAR CAPITAL, INC. is a Delaware corporation with its principal place of business in the State of Indiana.

4. Defendant ENVY HAWAII LLC d/b/a WINDWARD MOTORS d/b/a V RENT A CAR d/b/a VOLVO OF HONOLULU ("Envy" or "Borrower") is a Hawaii limited liability company with offices in Honolulu, Hawai'i and is in the business of selling new and used vehicles.

5. Defendant MIKHAIL BORISOVICH FEDOTOV ("Fedotov" or "Guarantor") is the Manager of Envy and is a guarantor of Envy's indebtedness owed to Plaintiff. On information and belief, Fedotov is a resident of the State of Hawaiʻi.

6. On or about September 4, 2015, Plaintiff and Defendant Envy entered into that certain *Demand Promissory Note and Loan and Security Agreement* (the "Note"), which evidenced Plaintiff's loan to Envy in the original principal amount of $500,000.00, secured by a lien and security interest in substantially all of the assets of Envy. A true and correct copy of the Note is attached hereto as **Exhibit "A"** and is incorporated herein by reference for all purposes.[1]

7. On or about September 4, 2015, Plaintiff and Defendant Envy entered into that certain *Power of Attorney (Entity/Partnership)* (the "Power of Attorney") in which, among other things, Envy appointed Plaintiff, with full power and authority to take the following actions upon the occurrence of an Event of Default:

> (a) demand, collect, accept receipt for, settle, compromise, adjust, foreclose, or realize upon any of the Collateral, in each case in such manner as Lender may determine;
>
> (b) file or prosecute any claim, litigation, suit, petition, writ, or proceeding in any court of competent jurisdiction or before any arbitrator or other neutral, or take any other action otherwise deemed appropriate by

---

[1] The Advance Schedule, made a part of the Note, required that Envy make principal reduction payments in the amount of 1.25% every 30 days for 36 months in order to extend the Maturity Date (as defined therein).

    Lender for the purpose of collecting any and all such moneys due to Borrower, whenever payable, and to enforce any other right in respect of the Collateral, including, without limitation, confessing to or consenting to judgments, writs of replevin or possession, and/or any equitable relief in favor of Lender or its Affiliates;

 (c) file or prosecute all proofs of claim against any account debtor on behalf of Borrower; and

 (d) notify the United States Postal Service of a change in address for the delivery of Borrower's mail to an address designated by Lender, and to receive Borrower's mail on behalf of Borrower.

A true and correct copy of the Power of Attorney is attached hereto as **Exhibit "B"** and is incorporated herein by reference for all purposes.

  8. On or about September 4, 2015, Defendant Fedotov signed an *Individual Guaranty* (the "<u>Guaranty</u>") wherein he "voluntarily, unconditionally, and absolutely guarantee[d] (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all Liabilities; and (ii) the full and prompt performance of all the terms, covenants, conditions, and agreements related to the Liabilities . . .."[2] A true and correct copy of the Guaranty

---

[2] The Note defines the term "Liabilities" to mean "any and all Advances, debts, financial obligations, Administrative Charges, Lender Universal Program Fees, Interest, Floorplan Fees, NSF fees, late fees, charges, expenses, attorneys' fees, costs of collection, covenants, and duties owing, arising, due, or payable from Borrower to Lender of any kind or nature, present, or future, under any instrument, guaranty, or other document, whether arising under this Note, any other Loan Document, or otherwise, whether directly or indirectly (including those acquired by assignment), absolute or contingent, primary or secondary, due or to become due, now existing, or hereafter arising, and however acquired."

is attached hereto as **Exhibit "C"** and is incorporated herein by reference for all purposes.

9.  On or about September 30, 2015, Plaintiff filed a UCC-1 Financing Statement (the "UCC-1") against Envy with the Bureau of Conveyances of the State of Hawaii under File No. A-57510810, in order to perfect its security interest and liens on the Collateral (as that term defined in the Note).  A true and correct copy of the UCC-1 is attached hereto as **Exhibit "D"** and is incorporated herein by reference for all purposes.[3]

10.  On or about March 16, 2016, Plaintiff and Envy entered into that certain *Amendment to Demand Promissory Note and Loan and Security Agreement* (the "Amendment"), which increased Envy Hawaii's Credit Line under the Note to $9,500,000.  Defendant Fedotov acknowledged and consented to the Amendment as indicated by his signature thereon.  A true and correct copy of the Amendment is attached hereto as **Exhibit "E"** and is incorporated herein by reference for all purposes.

11.  On or about March 16, 2016, Plaintiff and Envy entered into that certain Advance Schedule (the "Advance Schedule Amendment"), which, among

---

[3] The Note, the Power of Attorney, the Guaranty, the Amendment, the Advance Schedule Amendment and the UCC-1, together will all other documents evidencing the indebtedness, shall collectively be referred to herein as the "Loan Documents."

other things, increased the required principal reduction to extend the Maturity Date to 2.50% for specified periods of days. A true and correct copy of the Advance Schedule Amendment is attached hereto as **Exhibit "F"** and is incorporated herein by reference for all purposes.

12. In early 2017, NextGear learned that Envy was in severe financial distress. Envy advised NextGear that it had sold approximately One Million Dollars ($1,000,000.00) of vehicle inventory "out of trust," meaning that Envy sold cars financed by NextGear, received the proceeds from the sales of those cars, but failed to hold the proceeds in trust or remit them to NextGear, as contractually required by the Note.

13. NextGear later discovered that, to conceal its sales out of trust, Envy had been providing NextGear with fraudulent rental agreements, some in Chinese, to hide inventory that had been sold out of trust. Envy further advised NextGear that did not have the financial ability to pay off new cars within 365 days that had not yet sold, as required by the Note.

14. In May 2017, Plaintiff declared Envy in default of the Note by virtue of Envy's breach of the terms thereunder.

15. In June 2017, NextGear and Envy decided to work towards an amicable commercial divorce and entered into a Compromise Agreement, a true and correct copy of which is attached hereto as **Exhibit "G."** Pursuant to the

Compromise Agreement, Envy, *inter alia,* acknowledged the indebtedness to NextGear and underlying defaults, waived any equitable defenses to claims by NextGear, and provided NextGear a release from all claims. In exchange, NextGear agreed to forbear from exercising its default remedies such as repossessing inventory, until August 1, 2017, so Envy could obtain a substitute lender or sell the business.

16. Envy located a buyer for the business and began a sales process. However, the potential buyer backed out in early September 2017. This prompted Envy's counsel to send a letter to NextGear and Volvo stating that, due to the buyer backing out of the sale, Envy had no option but to cease operations at the dealership effective September 15, 2017. Volvo responded to that letter by accepting Envy's "voluntary termination" of the Franchise Agreement (defined below). A few days later, NextGear and Volvo further determined that Envy was not paying its landlord, it was indebted to its landlord in an amount exceeding $700,000, the landlord filed suit, and Envy executed an Agreed Judgment for eviction.

17. Immediately thereafter, on or around September 18, 2017, NextGear reached an informal understanding with Volvo and Envy that would permit Envy to continue operations at the dealership for a short period while Envy actively marketed the dealership. Specifically: (a) NextGear provided additional floorplan

advances to Envy so it could pay its landlord a sufficient sum to remain in the premises through December 31, 2017, pursuant to a written letter agreement with the landlord; (b) Volvo agreed to *not* consider the Franchise Agreement as being terminated and to assist with locating a purchaser and expediting Volvo's approval of any prospective new franchisee; and (c) Envy agreed to continue operating the service center so that Volvo customers could get warranty work completed at the dealership by a licensed Volvo mechanic.

18.  Although Envy worked towards finding a buyer, its efforts were unsuccessful.  In mid-November 2017, Volvo reached out to NextGear and requested a three-party mediation.  However, while the parties were working together to agree upon a location of mediation and the best mediator for these issues, Volvo terminated Envy's rights under its Franchise Agreement.  Despite the termination, the mediation took place on December 19, 2017 whereat Fedotov failed to personally appear.

19.  The mediation was unsuccessful and thereafter Plaintiff declared Envy in default of the Note by virtue of Envy's breach of the terms thereunder.

20.  Plaintiff elected to declare the entire indebtedness due and owing under the Note, which indebtedness, including principal, interest, finance charges and other fees, as of October 23, 2018, is no less than $3,977,273.50 (the "<u>Indebtedness</u>").

21. On January 27, 2017, Envy initiated a lawsuit against Volvo Car USA LLC ("Volvo") in the United District Court of the District of Hawaii, Civil No. 17-cv-00040 (the "Federal Lawsuit"), alleging that Volvo breached the Authorized Retailer Agreement between Envy and Volvo entered into on or about July 8, 2016 (the "Franchise Agreement"). A true and correct copy of the First Amended Complaint filed in the Federal Lawsuit is attached hereto as **Exhibit "H."**

22. On April 6, 2018, Volvo filed a Motion for Leave to file a Second Amended and Supplemental Counterclaim against Defendant Envy and Defendant Fedotov, which is currently pending before the court (the "Volvo Motion to Supplement Counterclaim"). A true and correct copy of the Motion for Leave to file a Second Amended and Supplemental Counterclaim is attached hereto as **Exhibit "I."**

23. On January 12, 2018, Envy initiated a lawsuit against Volvo in the Circuit Court of the First Circuit, State of Hawaii, Civil No. 18-1-0000-67 (9th Div) (the "State Lawsuit"), alleging breach of the Franchise Agreement. A true and correct copy of the Complaint filed in the State Lawsuit is attached hereto as **Exhibit "J."**

24. Plaintiff requests that the Court consider the appointment of David C. Farmer as Receiver. Mr. Farmer has extensive experience in bankruptcy and insolvency matters and has served as a receiver of several businesses in Hawai'i,

including the Hawaii Heath Connector. Mr. Farmer has indicated his willingness to serve as receiver in this case at an hourly rate of $275.00, plus expenses. Mr. Farm's curriculum vitae is attached as **Exhibit "K."**

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 2̲4̲, 2018.

                                                                                     */s/ Ryan Hawley*
                                                                    RYAN HAWLEY